832 F.2d 36
 56 USLW 2260, RICO Bus.Disp.Guide 6779
 John E. BARTICHECK, David Carmel, Empire Emblem Co., Melvin
Gittleman, Mark Gordon, Ellie Gordon, Dante Greco, Walter
Hirschinger, Theodore Kahn, Muriel Kahn, Stanley Low, Peter
Martin, Elissa Martin, Diane C. Natoli, Hobart Rauch, Howard
M. Shiffman, Robert R. Schwartz, John J. Vas, Gary
Wolkowitz, Sarah Wolkowitz, Al Atterman, Abraham Schlussel,
and Morton Goetz, Appellants,
v.
FIDELITY UNION BANK/FIRST NATIONAL STATE, a national banking
association, Gary Flaker, and Kevin Shanley, Appellees,
and
James D. Demetrakis, Stephen P. Sinisi, and Demetrakis,
Sinisi & Carmel, Esqs., Additional Defendants on
Counterclaim.
 No. 86-5870.
 United States Court of Appeals,
Third Circuit.
 Argued Aug. 3, 1987.
Decided Oct. 29, 1987.
 
 George B. Gelman, Philip L. Guarino (argued), Gelman & McNish, Hackensack, N.J., for appellants.
 Harvey D. Myerson, Mark E. Segall (argued), Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey, New York City, Gerald A. Liloia, Riker, Danzig, Scherer, Hyland & Perretti, Morristown, N.J., for appellees.
 Before SEITZ, MANSMANN, and GREENBERG, Circuit Judges.
 OPINION OF THE COURT
 SEITZ, Circuit Judge.
 
 
 1
 The plaintiffs in this action appeal a district court order dismissing their complaint for failure to state a claim upon which relief may be granted. This court has jurisdiction under 28 U.S.C. Sec. 1291 (1982).
 
 I.
 
 2
 Plaintiffs are twenty-three investors in a failed limited partnership. Defendant Fidelity Union Bank/First National State is the successor to Garden State National Bank, the institution involved in the events at issue here (both Fidelity Union Bank/First National State and Garden State National Bank will be referred to as "the Bank"). Defendant Gary Flaker was at all relevant times a vice president and loan officer of the Bank. Defendant Kevin Shanley was vice chairman of the Bank.
 
 
 3
 For present purposes, we must assume that the facts set forth in the complaint are true. Wisniewski v. Johns-Manville Corp., 759 F.2d 271, 273 (3d Cir.1985). These facts are as follows. In 1980 various individuals and entities organized the Continental Energy Associates IV limited partnership (Continental) to engage in oil and gas drilling. Plaintiffs allege that some or all of these organizers had preexisting debts to the Bank and could obtain the funds to repay these obligations only by selling interests in Continental to outside investors. Certain Continental organizers arranged with Shanley for the Bank to loan money to persons who wished to invest in Continental. Shanley authorized the organizers to advise prospective investors of the terms on which the Bank would lend funds for investment in Continental and to solicit and process loan applications. In some instances, the Bank authorized the organizers to transmit loan documents from the Bank to investors and from investors to the Bank. Shanley directed Flaker to process loan applications from prospective investors in Continental.
 
 
 4
 The Continental organizers approached each of the plaintiffs to induce them to purchase limited partnership interests in Continental. To this end, the organizers made several material misrepresentations. They told the plaintiffs that the bank was financing Continental's oil and gas drilling program. They also stated that the Bank had examined the geological data concerning the proposed drilling program and had concluded that the program was a completely safe investment. The organizers further represented that the Bank would lend the entire purchase price of each investor's limited partnership interest, regardless of the investor's ability to repay the loan from his own funds, because the Bank was satisfied that the investors would be able to repay the purchase price in two to three years out of the profits realized and distributed by Continental. The complaint alleges that, in approaching plaintiffs and making these misrepresentations, the organizers acted as agents of the Bank.
 
 
 5
 The plaintiffs borrowed a total of $2,310,000 from the Bank, in amounts ranging from $60,000 to $300,000. Most of the plaintiffs borrowed an amount equal to all or substantially all of the purchase price of their interests in Continental. The Bank granted the loans to plaintiffs without following its normal procedures for verifying the creditworthiness of loan applicants. This departure from standard practice was intended to assure the plaintiffs of the soundness of the venture. At the time it made the loans, the bank knew or should have known of the organizers' misrepresentations to the plaintiffs. Flaker assured several of the plaintiffs that the organizers' representations were true, when he knew or should have known that the statements were false.
 
 
 6
 The interests in Continental proved to be worthless. The plaintiffs subsequently commenced this action for damages against the Bank, Shanley, and Flaker. The complaint alleges violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. Secs. 1961-1968 (1982 & Supp.III 1985), and various pendent claims under state law. The RICO count alleges, inter alia, that in furtherance of a scheme to defraud the plaintiffs, the defendants used, and caused the plaintiffs to use, the United States mails on two or more occasions, in violation of the federal mail fraud statute, 18 U.S.C. Sec. 1341 (1982). Mail fraud falls within RICO's definition of "racketeering activity." 18 U.S.C. Sec. 1961(1) (Supp.III 1985).
 
 
 7
 The district court granted the defendants' motion to dismiss the RICO claim. The court held that the acts of mail fraud alleged in the complaint did not amount to a "pattern" of racketeering activity, an essential element of a RICO claim, see 18 U.S.C. Secs. 1961(5), 1962 (1982). The court employed a two-pronged definition of "pattern." Under this definition, racketeering activity constitutes a pattern only if it is in furtherance of (1) two or more unlawful schemes, or (2) a single open-ended, ongoing scheme. The court found that the complaint alleged only a single scheme, a plan fraudulently to obtain loan applications from investors in Continental. The court also determined that the alleged scheme was not open-ended because it had fully attained its objective and posed no threat of further unlawful activity.
 
 
 8
 Having held that the plaintiffs failed to state a claim under RICO, the district court dismissed the remainder of the complaint for lack of subject-matter jurisdiction. This appeal followed.
 
 II.
 
 9
 The sole question before us is whether the district court erred in holding that the plaintiffs' complaint failed to allege a "pattern of racketeering activity" as that term is used in RICO. Our review is plenary.
 
 
 10
 The RICO statute states that a " 'pattern of racketeering activity' requires at least two acts of racketeering activity." 18 U.S.C. Sec. 1961(5) (1982). In Sedima S.P.R.L. v. Imrex Co., 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), the Supreme Court observed in dictum that although two acts of racketeering are necessary to form a pattern, they may not be sufficient. Id. at 496 n. 14, 105 S.Ct. at 3285 n. 14. The Court continued:
 
 
 11
 The legislative history supports the view that two isolated acts of racketeering do not constitute a pattern. As the Senate Report explained: "The target of [RICO] is thus not sporadic activity. The infiltration of legitimate business normally requires more than one 'racketeering activity' and the threat of continuing activity to be effective. It is this factor of continuity plus relationship which combines to produce a pattern." S. Rep. No. 91-617, p. 158 (1969) (emphasis added).
 
 
 12
 Id.; accord id. at 527-28, 105 S.Ct. at 3289-90 (Powell, J., dissenting). The Sedima dictum has been widely viewed as a signal to the federal courts to fashion a limiting construction of RICO around the pattern requirement and the concepts of "continuity" and "relationship." The position of the district court in this case that a pattern requires either two distinct schemes or a single ongoing scheme represents an attempt to constrain the reach of the statute along the lines suggested by Sedima.
 
 
 13
 In previous RICO cases this court has not had occasion to define the precise contours of the pattern requirement. See Town of Kearny v. Hudson Meadows Urban Renewal Corp., 829 F.2d 1263, 1267-68 (3d Cir.1987); Petro-Tech, Inc. v. Western Co. of N. Am., 824 F.2d 1349, 1354-55 (3d Cir.1987); United States v. Grayson, 795 F.2d 278, 289-90 (3d Cir.1986), cert. denied, --- U.S. ----, 107 S.Ct. 927, 93 L.Ed.2d 978 (1987); Malley-Duff & Assocs. v. Crown Life Ins. Co., 792 F.2d 341, 353 n. 20 (3d Cir.1986), aff'd on other grounds, --- U.S. ----, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987). In those cases we assumed, without deciding, that a pattern requires not only two acts of racketeering but also two distinct unlawful schemes. In each instance, we concluded that the facts before us satisfied even this stringent standard. Those cases, however, also recognized that the existence of a RICO pattern does not turn on the abstract characterization of racketeering acts as "continuous" and "related" but rather on a combination of specific factors such as the number of unlawful acts, the length of time over which the acts were committed, the similarity of the acts, the number of victims, the number of perpetrators, and the character of the unlawful activity. See Petro-Tech, 824 F.2d at 1355 (cases refusing to find a RICO pattern are "distinguishable from this case on the basis of the time period, number of victims, number of perpetrators and number of predicate acts at issue"); see also Town of Kearny, 829 F.2d at 1267; Grayson, 795 F.2d at 290.
 
 
 14
 The complaint in this case arguably depicts an unlawful venture more modest than those involved in our earlier cases. Cf. Town of Kearny, 829 F.2d at 1268 (two separate schemes to bribe city officials); Petro-Tech, 824 F.2d at 1355 (fraud involving services for eighty oil wells performed pursuant to two contracts covering different time periods); Grayson, 795 F.2d at 290 (seven racketeering acts, performed over a period of more than a year, involving manufacture, distribution, and sale of methamphetamine and phencyclidine); Malley-Duff, 792 F.2d at 353 n. 20 (fraudulent termination of insurance agencies in several cities). Indeed, the plaintiffs concede that they have alleged only a single unlawful scheme.
 
 
 15
 Nevertheless, we believe the district court erred in concluding that the plaintiffs failed to allege a RICO pattern. Although the complaint states only that the defendants committed "two or more" acts of mail fraud in furtherance of their alleged scheme, it may fairly be inferred from the nature of the scheme that defendants engaged in considerably more than two such acts. The scheme was carried out by several individuals and two separate entities, Continental and the Bank. Most significantly, the scheme involved the repetition of similar misrepresentations to more than twenty investors. To refer to such conduct as a "pattern" of fraudulent activity certainly comports with the ordinary understanding of the term, and we believe that this conduct properly falls within the reach of the RICO statute.
 
 
 16
 In holding that the complaint alleges a pattern of racketeering activity, we reject the position that a RICO pattern must involve at least two distinct unlawful schemes. See, e.g., Superior Oil Co. v. Fulmer, 785 F.2d 252 (8th Cir.1986). We note two difficulties with this view. First, "scheme" is hardly a self-defining term, and it appears nowhere in the RICO statute. We prefer to confront the inevitable definitional problems in this context by interpreting the "pattern" language directly, rather than by introducing a new and perhaps more amorphous concept into the analysis. Second, even assuming one could adequately distinguish among multiple schemes, a rule requiring two or more schemes would exempt from RICO liability defendants who engage in only a single unlawful scheme, however extensive and injurious. Such an outcome is plainly inconsistent with the purposes of the statute.
 
 
 17
 We also reject the view that racketeering acts committed pursuant to a single scheme can constitute a RICO pattern only if the scheme is potentially ongoing or open-ended. This requirement is ostensibly derived from the statement in RICO's legislative history, highlighted in Sedima, that a pattern must display "continuity" among the various acts of racketeering. See Sedima, 473 U.S. at 496 n. 14, 105 S.Ct. at 3285 n. 14 (quoting S. Rep. No. 617, 91st Cong., 1st Sess. 158 (1969)). We do not believe, however, that the notion of continuity compels a requirement of "open-endedness." At the very least, such a requirement would produce anomalous results. This approach would allow a party to maintain a RICO claim if he brought suit before the unlawful scheme had attained its objective; in such a case the scheme would presumably be considered open-ended. This same interpretation, though, would deny a RICO cause of action in a case where the scheme had fully accomplished its goal. Yet it is the completed scheme that inflicts the greater harm and more strongly implicates the remedial purposes of RICO.
 
 
 18
 We read the legislative history's reference to "continuity" as simply calling for an inquiry into the extent of the racketeering activity. Although temporal open-endedness may be one measure of extent, it is not the only one. We decline to adopt a verbal formula for determining when unlawful activity is sufficiently extensive to be "continuous." This determination necessarily depends on the circumstances of the particular case.
 
 
 19
 Finally, we fully appreciate the concern over civil RICO's increasing use in attempts to reach "garden variety" business fraud and the potential utility of the pattern requirement as a means of curtailing this trend. The desire to limit the range of the statute, however, must be tempered by the insight that in some instances business-related fraud can constitute a pattern of racketeering activity under RICO. On the basis of the allegations contained in the complaint, we believe this is such an instance.
 
 III.
 
 20
 We will reverse the judgment of the district court dismissing plaintiffs' RICO claim and remand for proceedings consistent with this opinion. Because we hold that the district court erred in dismissing this federal claim, we also hold that the court erred in dismissing plaintiffs' pendent state claims for lack of subject-matter jurisdiction. Accordingly, we will order that plaintiffs' pendent claims be reinstated.