Rocco J. FIORENTINO

v.

John D. CONVERSE, Kathleen Converse, John T. Converse Maureen Converse, Rick Fargo, a/k/a Donald Fargo, Cindy DiFazio, Ice Systems of New Jersey, Inc., Food Service Equipment Contractors, Inc., Frank Rapoport, Alan Gordon and Saul, Ewing, Remick & Saul.

Civ. A. No. 88–5065.

United States District Court,
E.D. Pennsylvania.

Jan. 31, 1989.

Stuart D. Fiel, Stuart D. Fiel, Associates, P.A., Philadelphia, Pa., for plaintiff.

Lawrence J. Roberts, Elkins Park, Pa., Teresa A. Wallace, Philadelphia, Pa., for defendants.

MEMORANDUM

LOWELL A. REED, Jr., District Judge.

Plaintiff Rocco Fiorentino brings this action against John D. Converse, Kathleen

Converse, John T. Converse, Maureen Converse, Rick Fargo a/k/a Donald Fargo, Cindy DiFazio, Ice Systems of New Jersey, Inc. and Food Service Equipment Contractors, Inc. for violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968 as well as various state law claims, and against Frank Rapoport, Alan Gordon and Saul, Ewing, Remick & Saul for breach of contract, negligence and breach of fiduciary duty.

Before the court is the motion of the defendants John D. Converse, Kathleen Converse, John T. Converse, Maureen Converse, Rick Fargo a/k/a Donald Fargo, Cindy DiFazio, Ice Systems of New Jersey, Inc. and Food Service Equipment Contractors, Inc. to dismiss plaintiff's complaint for failure to state a claim under the RICO statute.[1]

## I

## FACTUAL BACKGROUND

The facts, as alleged in plaintiff's complaint, are as follows: Plaintiff Rocco Fiorentino and John D. Converse were equal shareholders in J & R Equipment Service, Inc. (J & R), with each owning 2,500 shares of the 5,000 shares of outstanding capital stock. At the time of the alleged events, J & R was engaged in the sale, service and distribution of restaurant equipment and owned all of the outstanding capital stock of Leasomatic, Inc. (Leasomatic), a corporation which leased medical, capital and transportation equipment.

On January 1, 1986, plaintiff and defendant John Converse entered into a stock

purchase agreement, promissory note and guaranty. J & R agreed to purchase plaintiff's 2,500 shares of capital stock in exchange for $1,100,000.00 in cash, plus all the outstanding capital stock of Leasomatic to be payed in 120 equal monthly installments of $9,166.67 personally guaranteed by John D. Converse. The agreement documents required the plaintiff to deliver to John D. Converse the certificates representing his ownership of the 2,500 shares of the capital stock in J & R, giving Converse the right to vote those shares as well as appointing Converse agent, attorney and proxy. Plaintiff performed all of these contractual provisions and from January 1, 1986 through January 1, 1987 received 13 monthly installments totalling $119,166.71 paid on account. On February 1, 1987, plaintiff and defendant John D. Converse agreed to reduce the monthly installments to $5,500.00 and agreed that all other previously agreed upon provisions would remain in effect. From February 1, 1987 through January 1, 1988, plaintiff received $66,-000.00 in 12 monthly installments at the agreed upon reduction, bringing the total amount paid thus far to $185,166.71. Plaintiff alleges that despite his demands, since February 1, 1988, John D. Converse and J & R failed to render the remainder of the payments to the plaintiff.

Plaintiff contends that on or about February 1, 1987, defendant John D. Converse established and incorporated defendants Food Service Equipment Contractors, Inc. and Ice Systems of New Jersey, Inc. with himself as President and distributed, with-

---

1. Pending before this court is also the motion of defendants Frank Rapoport, Alan Gordon and Saul, Ewing, Remick & Saul to dismiss the eighth, ninth and tenth counts of the complaint on jurisdictional grounds. These defendants were the attorneys and law firm who represented John D. Converse in establishing and incorporating defendants Ice Systems of New Jersey, Inc. and Food Service Equipment Contractors, Inc. I note that there are no RICO violations asserted against them in plaintiff's complaint, and despite Mr. Fiorentino's later attempts in his briefs to allege that these lawyers and their firm "aided and abetted" defendant John D. Converse in the alleged RICO acts, the complaint was never amended to reflect such allegations. The only allegations made against these defendants appear in the eighth, ninth and tenth counts of the complaint and allege state law claims for breach of contract, negligence, and breach of fiduciary duty. Because these defendants are not part of the federal RICO claims and therefore pendent jurisdiction may not be used as a jurisdictional basis, I assume that plaintiff attempts to assert jurisdiction over these defendants in federal court under the doctrine of "pendent party jurisdiction." Because I am dismissing the complaint for failure to state a claim under the RICO statute, I need not reach the issue of whether the doctrine of pendent jurisdiction can be exercised to join a party solely on the basis of a state-law claim over which there is no independent basis for federal jurisdiction.

out receiving consideration in return, all outstanding stock to his wife, Kathleen Converse, his son, John T. Converse, his daughter Maureen Converse, his business partner, Rick Fargo, and his secretary, Cindy DiFazio, all defendants in this action. Plaintiff alleges that John D. Converse, Kathleen Converse, John T. Converse, Maureen Converse, Rick Fargo, and Cindy DiFazio began transferring assets from J & R to Food Service Equipment Contractors, Inc. and Ice Systems of New Jersey, Inc., without providing J & R with any consideration. As a result of these transfers, J & R's yearly revenue was reduced to an amount in excess of $900,000.00. On or about April 8, 1988, defendant John D. Converse as the sole officer, shareholder and director of J & R, filed a voluntary petition for bankruptcy on the corporation's behalf. Plaintiff alleges, *inter alia,* that defendants' actions were designed to defraud him of the money he was owed from his sale of J & R stock to defendant John D. Converse.

## II

DISCUSSION

For purposes of a motion to dismiss, I must of course accept as true all of plaintiff's well pleaded allegations, *Jenkins v. McKeithen,* 395 U.S. 411, 421–22, 89 S.Ct. 1843, 1849, 23 L.Ed.2d 404 (1969), and construe them in a light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 237, 94 S.Ct. 1683, 1687, 40 L.Ed.2d 90 (1974); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). However, in order for a civil RICO claim to survive a Rule 12(b)(6) motion, plaintiff must allege (1) the conducting of, (2) an enterprise, (3) through a pattern, (4) of racketeering activity. *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985). "The

plaintiff must, of course, allege each of these elements to state a claim." *Id.* Because I find that the conduct alleged in plaintiff's complaint does not constitute a pattern of racketeering activity under the RICO statute, I will dismiss plaintiff's RICO claims.

Interpreting what constitutes a "pattern of racketeering activity" under the RICO statute is an issue which the federal courts have grappled with often in recent years. In *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985), the Supreme Court addressed the concept of a pattern of racketeering activity and cautioned that "while two acts are necessary, they may not be sufficient." *Id.* at 496 n. 14, 105 S.Ct. at 3285 n. 14. The Court, however, failed to define that term further, leaving the lower federal courts and Congress to clarify what constitutes a pattern of racketeering activity under the statute. *Id.* Since the Supreme Court's decision in *Sedima,* the Third Circuit has confronted this issue on a number of occasions. *See Environmental Tectonics v. W.S. Kirkpatrick,* 847 F.2d 1052 (3d Cir.1988); *Saporito v. Combustion Engineering Inc.,* 843 F.2d 666 (3d Cir.1988); *Marshall–Silver Construction Company, Inc. v. Mendel,* 835 F.2d 63 (3d Cir.1987); *Barticheck v. Fidelity Union Bank/First National State,* 832 F.2d 36 (3d Cir.1987).[2] In what has become the seminal case in this circuit on the issue of what constitutes a pattern of racketeering activity, the court of appeals, in *Barticheck v. Fidelity Union Bank/First National State,* 832 F.2d 36 (3d Cir.1987), articulated six factors to be used on a case-by-case basis in evaluating whether, under the facts of a particular case, the plaintiff has stated a claim under RICO. The factors relevant to the analysis include: the number of unlawful acts, the length of time over which the acts were committed, the similarity of the acts, the

---

**2.** It is, to say the least, more than a minor annoyance to this court that the defendants have not cited one of these Third Circuit cases in their memorandum supporting their motion to dismiss. Moreover, it is an affront to this court that defendants blatantly cite as authority cases from the Court of Appeals for the Eighth Circuit, which interpret "a pattern of racketeer-

ing activity" entirely differently from our circuit and is in fact an interpretation which our circuit expressly rejects. *See Barticheck v. Fidelity Union Bank/First National State,* 832 F.2d 36, 39 (3d Cir.1987). The disposition of this case is controlled entirely by *Barticheck* and its progeny, *Marshall–Silver, Saporito* and *Environmental Tectonics.*

number of victims, the number of perpetrators, and the character of the unlawful activity. *Id.* at 39. The *Barticheck* court, applying these factors to the facts of that case,[3] found that plaintiff had indeed enunciated a pattern of racketeering activity and therefore found that the district court erred in dismissing the complaint.

The Third Circuit had occasion to once again confront this issue shortly after *Barticheck* was decided. In *Marshall–Silver Construction Company, Inc. v. Mendel,* 835 F.2d 63 (3d Cir.1987) a general contractor brought suit against an engineering firm, its officers, and a law firm of which the officers were members, alleging that over the course of a year, the defendants fraudulently forced the general contractor into bankruptcy. According to Marshall–Silver, the defendants' company did not perform adequately on its contracts, and plaintiff thereafter withheld payment. One of the defendants subsequently confronted the plaintiff regarding the withheld payment and wrote two strongly-worded letters threatening to destroy the plaintiff unless he paid defendants for the work. Defendants then filed a petition in the bankruptcy court requesting that plaintiff be put into involuntary bankruptcy and contacted the press in order to publicize the filing of the bankruptcy petition. Plaintiff alleged that the defendants were aware that the petition was false, and that the publicity surrounding the petition essentially destroyed its business. The Third Circuit, applying the *Barticheck* analysis to the facts of the case, found that Marshall–Silver's allegations were insufficient to meet the statutory requirement of a pattern and affirmed the district court's dismissal of plaintiff's RICO claim. The court stated:

The target of the RICO statute, as its name suggests, is criminal activity that, because of its organization, duration, and objectives poses, or during its existence posed, a threat of a series of injuries over a significant period of time. Here we have a single victim, a single injury, and a single, short-lived scheme with only two active perpetrators. This is not criminal activity with the kind of continuity of which we spoke in *Barticheck.*

*Id.* at 67 (footnote omitted).

In *Saporito v. Combustion Engineering Inc.,* 843 F.2d 666 (3d Cir.1988), plaintiffs, employees of defendants, brought a RICO action against their employer and its officers, alleging that while they were induced to retire under one retirement plan, the defendants concealed from them the development of a more generous plan while disclosing this plan to other employees, affording these other employees the opportunity to retire under the more generous plan. *Id.* at 667. The Third Circuit, finding that there were 32 victims, at least 5 perpetrators, and more than 32 unlawful acts, reversed the district court's dismissal of the RICO count, finding that plaintiffs had satisfied the *Barticheck* criteria. *Id.* at 677–78.

*Environmental Tectonics v. W.S. Kirkpatrick,* 847 F.2d 1052 (3d Cir.1988), involved a suit between manufacturers of aeromedical equipment. Plaintiff alleged that defendants bribed certain Nigerian officials in order to influence these officials to award it a Nigerian defense contract. Stressing that the illegal influence of the Nigerian government's public officials was a sophisticated, elaborate and complex

---

**3.** *Barticheck* made it clear that each factor, taken alone, is not dispositive, but rather that each is to be taken in conjunction with the other in order to determine whether the plaintiff states a claim. *Barticheck,* 832 F.2d at 39. Moreover, cases in this district which have applied the *Barticheck* test have found no one factor to be dispositive of a particular case. In *Forum Publications, Inc. v. P.T. Publishers, Inc.,* 700 F.Supp. 236 (E.D.Pa.1988) for example, Judge McGlynn dismissed a RICO case and found that the length of time over which the acts were committed

"become[s] irrelevant if the exaggerated assertions are considered one continuous 'act.'" *Forum Publications, Inc.,* at 240. Similarly, Judge Cahn, in *Brady v. Industrial Valley Title Insurance Co.,* No. 88–1721, slip op. (E.D.Pa. November 22, 1988) [1988 WL 124895] (LEXIS, Genfed library, Dist file), found that "[a]lthough the length of time over which the racketeering activity took place is one of the factors to be considered, I do not find it to be dispositive in this case." *Brady,* slip op. at 9.

scheme,[4] the court of appeals held that a pattern of racketeering activity indeed existed and that the district court should not have dismissed plaintiff's RICO claims. *Id.* at 1063–64.

■■■■■ Analyzing these four Third Circuit cases, I find *Marshall–Silver* to be most similar to the instant case. Whereas the scope of the scheme in *Environmental Tectonics* was complex and sophisticated, and whereas *Barticheck* involved multiple victims, multiple defendants, and at least 23 alleged acts of racketeering activity, and *Saporito* involved 32 victims, 5 perpetrators and more than 32 unlawful acts, *Marshall–Silver* involved a single victim, a single injury, and a single, short-lived scheme with only two active perpetrators. The Third Circuit in *Marshall–Silver* took great pains to stress the fact that these were important considerations in its determination that no pattern existed. While the factual matrix of *Marshall–Silver* and the case at bar are not identical,[5] I find the Third Circuit's reasoning in *Marshall–Silver* persuasive and believe that it should apply to the case *sub judice*. Despite plaintiff's assertions to the contrary, all of the alleged racketeering acts in this case, like *Marshall–Silver*, were designed to defraud one victim—Fiorentino[6]—in one scheme—the fraudulent transfer of assets from J & R to Ice Systems of New Jersey and Food Service Equipment Contractors— by one active perpetrator—John D. Converse.[7]

---

4. If the appellant's allegations are true, a European conglomerate. and two American corporations—successfully, and over a two-year period—organized to influence a foreign country's award of the procurement contract by illegal means. To facilitate their scheme, they hired a consultant who had contacts with Nigerian officials who were amenable to such an arrangement. This consultant also developed a sophisticated and outwardly legal front for the payments, thereby increasing the difficulty already inherent in directing such a scheme. The wire and mail communications used to implement this undertaking account for numerous violations of federal law. *Environmental Tectonics*, 847 F.2d at 1063.

5. The facts of *Marshall–Silver* are similar to the instant case. Mr. Fiorentino essentially alleges, as did plaintiffs in both *Marshall–Silver* and *Brady v. Industrial Valley Title Insurance Co.*, No. 88–1721 (E.D.Pa. November 22, 1988) [1988 WL 124895] (LEXIS, Genfed library, Dist file), that they were "driven out of business by a fraudulent scheme which involved the use of the judicial power of the courts." *Brady*, slip op. at 9.

6. Plaintiff asserts in his memorandum opposing defendants' motion to dismiss that he is not the only "victim" in this case. Plaintiff contends that Fidelity Bank, which had an assignment for all accounts receivable, and the 89 creditors of J & R were all "victims" of defendants' scheme. However, I do not believe that *Barticheck* intended courts to include such indirect "victims." If it had, one could think of all sorts of tangential victims including the "real" victim's family, who would arguably be "victimized" by the scheme by virtue of their relationship with the victim. While I do not mean to minimize the potential injury to these individuals, I do not think that *Barticheck* intended courts to include such remote persons for purposes of that analysis. Moreover, I cannot accept such a broad reading of *Barticheck* because I believe that such an approach would sap the "victim" consideration in *Barticheck* of much of its strength. Instead, I agree and accept Judge McGlynn's recent analysis in *Forum Publications, Inc. v. P.T. Publishers, Inc.*, 700 F.Supp. 236 (E.D.Pa. 1988), that "*Barticheck* surely does not direct courts to consider such indirect victims. If it did, any fraudulent scheme would produce millions of victims, since all members of society are 'victims' of crime. This approach, however, would make the 'victim' factor of *Barticheck* meaningless." *Forum Publications*, at 240 n. 7.

7. Plaintiff believes that this element of the *Barticheck* test is simple—because there are eight different defendants identified in the RICO counts, there must therefore be eight perpetrators. I cannot, however, accept such a simplistic approach and do not believe that the *Barticheck* court intended district courts to utilize such an approach. On the contrary, this court must look beyond the named defendants and examine the facts as alleged in the complaint to attempt to identify who the *active* perpetrators are. This is the method the Third Circuit used in *Marshall–Silver*. *Marshall–Silver*, 835 F.2d at 67 n. 4. Under this approach, I find that in the case at bar, when the factual allegations are actually broken down to component parts, John D. Converse was the only *active* perpetrator. In his complaint, plaintiff admits that John D. Converse, as president of J & R and as president of both Food Service Equipment Contractors, Inc. and Ice Systems of New Jersey, controlled every aspect of their business. Additionally, it was John D. Converse who personally guaranteed the payment of the installments which J & R never paid. While it may be true that he used the seven other defendants to achieve his goals, these other defendants appear to have partici-

Finally, turning to the "number of unlawful acts" factor in *Barticheck*, although plaintiff attempts to identify nine predicate acts in his complaint, I find that in fact plaintiff merely breaks down the elements of a single event—a scheme to defraud him of what was owed under a stock purchase agreement. *"Barticheck* and *Marshall–Silver* set forth a broad and flexible standard for finding a RICO pattern. However, this standard will not allow a plaintiff to break down a single criminal event into several stages and deem it a pattern." *J.A. Moore Construction Co. v. Sussex Associates Ltd.,* 688 F.Supp. 982, 995 (D.Del.1988). Because I believe that plaintiff is attempting to do just that, I find that the "number of unlawful acts" factor of *Barticheck,* together with the other factors discussed above,[8] compels me to conclude that plaintiff has not alleged a pattern of racketeering activity within the meaning of the statute. While I am not unsympathetic to plaintiff's plight and frustration over being unable to collect what he believes is rightfully his, and while it is clear that plaintiff states several cognizable state law claims, I simply cannot find that plaintiff has alleged a pattern of racketeering activity under the RICO statute sufficient to survive defendants' motion. Accordingly, I must dismiss plaintiff's complaint.[9] Because no other federal claims exist and because complete diversity of citizenship is lacking, I must also dismiss the pendent state claims without prejudice.

An appropriate order follows.

ORDER

AND NOW, this 31st day of January, 1989, upon consideration of the motion of the defendants to dismiss plaintiff's complaint for failure to state a claim upon which relief can be granted, and the motion of the defendants Frank Rapoport, Alan Gordon and Saul, Ewing, Remick & Saul to dismiss the eighth, ninth and tenth counts of the complaint, the responses thereto, and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED and DECREED that:

1. The motion of the defendants John D. Converse, Kathleen Converse, John T. Converse, Maureen Converse, Rick Fargo a/k/a Donald Fargo, Cindy DiFazio, Ice Systems of New Jersey, Inc. and Food Service Equipment Contractors, Inc. is GRANTED and Count I of plaintiff's complaint is DISMISSED with prejudice pursuant to Fed.R.Civ.P. 12(b)(6);

2. Having dismissed plaintiff's only claim based on federal question jurisdiction, and because complete diversity of citizenship is lacking, there is no longer pendent jurisdiction over the state claims and plaintiff's state law claims in Counts II–VII are therefore DISMISSED without prejudice;

3. The motion of defendants Frank Rapoport, Alan Gordon and Saul, Ewing, Remick & Saul to dismiss the eighth, ninth and tenth counts of the complaint is GRANTED and plaintiff's state law claims

---

pated in the alleged events *through the activities* of John D. Converse.

8. I wish to make it clear that even if I found the acts which plaintiff asserts to be separate acts in furtherance of the scheme, I would still dismiss plaintiff's RICO claims based on my determination, after applying the *Barticheck* analysis to the facts of the case, that plaintiff has failed to allege a pattern of racketeering activity.

9. Because it is clear to me that the plaintiff "can prove no set of facts in support of his claim which would entitle him to relief," *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957), I am dismissing his RICO claim with prejudice. I note, however, that several district courts in this circuit have held that the RICO statute vests concurrent jurisdiction in both the state and federal courts. *See, e.g., Village Improvement Ass'n v. Dow Chemical Co.,* 655 F.Supp. 311, 313 (E.D.Pa.1987); *Vincent v. Metropolitan Hospital,* No. 86–0948 (E.D.Pa. June 30, 1986) [1986 WL 7568] (LEXIS, Genfed library, Dist file); *Chas. Kurz Co. v. Lombardi,* 595 F.Supp. 373, 381 n. 11 (E.D.Pa.1984). *See also Lou v. Belzberg,* 834 F.2d 730, 739 (9th Cir.1987), *cert. denied,* — U.S. —, 108 S.Ct. 1302, 99 L.Ed.2d 512 (1988). As a result, I make no findings with respect to any state court action plaintiff may have already brought or may bring in the future.

in Counts VIII–X are hereby DISMISSED without prejudice.