SENECA INSURANCE COMPANY,
Lincoln General Insurance
Company, Plaintiffs,

v.

COMMERCIAL       TRANSPORTATION,
INC.;  Evans,  Conger,  Broussard  &
McCrea, Inc.; Anthony N. Cappolla, Sr.;
Anthony N. Cappolla, Jr.;  Robert Cap-
polla;  Charles H. Bernier;  Defendants.

Civ. A. No. 1:CV–95–1276.

United States District Court,
M.D. Pennsylvania.

Nov. 16, 1995.

Michael J. McGovern, Richard S. Kahlbaugh, York, PA, for Seneca Insurance Company, Lincoln General Insurance Company.

David A. Gradwohl, Pelino & Rosenthal, P.C., Philadelphia, PA, Dale S. Ardizzone, Connor & Weber, P.C., Philadelphia, PA, Patrick J. Doran, Pelino & Lentz, P.C., Philadelphia, PA, for Commercial Transportation, Inc., Anthony N. Cappolla, Sr., Anthony N. Cappolla, Jr., Robert Cappolla.

Michael J. Cawley, Eileen McGinley, Margolis, Edelstein & Scherlis, Philadelphia, PA, for Conger, Broussard & McCrea, Inc., Charles H. Bernier.

## *MEMORANDUM*

CALDWELL, District Judge.

### I. *BACKGROUND*

This action arises from policies for property and casualty insurance issued by the Plaintiffs, Seneca Insurance Company ("Seneca") and Lincoln General Insurance Company ("Lincoln"), to Defendant Commercial Transportation, Inc. ("CTI"), a commercial trucking firm.[1]

The complaint alleges that the Defendants intentionally misrepresented facts in CTI's application for insurance with Seneca and Lincoln in June, 1992 in an attempt to secure a lower premium than that to which CTI was entitled.[2] Specifically, Plaintiffs assert that Defendants submitted: (1) a fraudulent application; (2) fraudulent equipment lists; (3) fraudulent drivers lists; (4) fraudulent financial information; and (5) fraudulent operational data.

Based on CTI's representations, Seneca issued a policy to CTI on August 7, 1992, which was effective until August, 1993. During the life of the Seneca Policy, Defendants allegedly continued to submit fraudulent monthly reports, including gross receipts certifications, driver schedules and lists, vehicle schedules and lists, and premiums and claims.

In June, 1993, CTI notified Lincoln that it would need insurance coverage after the Seneca Policy expired in August, 1993. Defendants renewed the alleged misrepresentations made in the Seneca Policy application and provided Lincoln with additional fraudulent data. Based upon these representations, Lincoln issued an insurance policy in August,

1993. Thereafter, from August, 1993 through December, 1993, Defendants again submitted fraudulent monthly gross receipts certifications, driver schedules and lists, vehicle schedules and lists, and premiums and claims.

On August 10, 1995, Plaintiffs filed the instant action asserting six grounds for relief. Counts I and II of the complaint seek relief under the Declaratory Judgement Act, 28 U.S.C. § 2201. Counts III and IV allege fraud by CTI, the Cappolla Defendants, ECBM, and Bernier, and Count V seeks a judgment against CTI for unjust enrichment. Finally, Count VI is a claim against the Cappolla Defendants and Bernier for violation of the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*

On August 31, 1995, all of the Defendants except ECBM filed motions to dismiss, or in the alternative, to transfer this action to the Eastern District of Pennsylvania.

### II. *LAW AND ANALYSIS*

#### A. Motion to Dismiss

##### 1. Venue

The Defendants first seek dismissal of Plaintiffs' complaint pursuant to Fed. R.Civ.P. 12(b)(3) for improper venue. However, venue is proper in the Middle District because Plaintiffs have sufficiently established that a substantial part of the events giving rise to their claims occurred here. 28 U.S.C. § 1391(b)(2).

##### 2. Jurisdiction

Defendants also seek dismissal of Counts I–V for lack of subject matter jurisdiction. It is clear that there exists no independent basis for jurisdiction over those

---

1. The remaining Defendants are: Anthony N. Cappolla, Sr., Anthony N. Cappolla, Jr., and Robert Cappolla (the "Cappolla Defendants"), who are officers of CTI; Evans, Conger, Broussard and McCrea, Inc. ("ECBM"), which is CTI's insurance agent; and Charles H. Bernier, who is an employee of ECBM.

2. Plaintiffs maintain that Defendants represented that CTI operated only the vehicles it owned, and did not include a fleet of vehicles which it leased and operated. Federal regulations dictate that an insurer insure trucking companies, such as CTI, for all vehicles *operated*, not just those owned. Thus, a paramount consideration in the calculation of the insurance premium in this case was the number of vehicles operated by CTI.

claims.[3] Plaintiffs maintain that because we have original jurisdiction over Count VI, the RICO claim, we may assert supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367. Defendants contend, however, that Count VI fails to state a claim for violation of RICO and should therefore be dismissed under Rule 12(b)(6). If Count VI is dismissed, dismissal of the remaining claims is appropriate. Thus, we must determine whether Count VI sufficiently alleges a claim for violation of 18 U.S.C. § 1962(c).

■ When considering a motion to dismiss under Fed.R.Civ.P. 12(b)(6) "all facts alleged in the complaint and all reasonable inferences that can be drawn from them must be accepted as true." *Malia v. General Electric Co.*, 23 F.3d 828, 830 (3d Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 377, 130 L.Ed.2d 328 (1994). The motion must be denied unless the plaintiff cannot prove any facts in support of the claim which would entitle him to relief. *Rocks v. Philadelphia,* 868 F.2d 644, 645 (3d Cir.1989).

■ In Count VI of their complaint, Plaintiffs' allege that the Cappolla Defendants and Bernier violated section 1962(c) of RICO, which provides that

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c). Thus, to state a claim for violation of this section, a plaintiff must allege: (1) the existence of an enterprise that affects interstate commerce and is separate and distinct from the defendants; (2) that each defendant was associated with the enterprise; (3) that each defendant conducted or participated in the affairs of the enterprise; (4) that each defendant engaged in a pattern of racketeering activity; and (5) that the racketeering was the proximate cause of injury to the plaintiff. *Sedima, S.P.R.L. v. Imrex, Co.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346, 358–59 (1985).

■ Defendants maintain that the complaint fails to allege a "pattern" of racketeering activity.[4] That term is defined as "at least two acts of racketeering activity" within a ten year period. 18 U.S.C. § 1961(5). "[T]o prove a pattern or racketeering activity a plaintiff must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 239, 109 S.Ct. 2893, 2900, 106 L.Ed.2d 195, 208 (1989) (emphasis in original). Thus, a plaintiff must show both relatedness and continuity. *Tabas v. Tabas,* 47 F.3d 1280 (3d Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 2269, 132 L.Ed.2d 275 (1995).

■ Prior to *Tabas*, the Third Circuit examined six factors to determine whether a pattern of racketeering activity had been established: (1) the number of unlawful acts; (2) the length of time over which the acts were committed; (3) the similarity of the acts; (4) the number of victims; (5) the number of perpetrators; and (6) the character of the unlawful activity. *Barticheck v. Fidelity Union Bank/First National State,* 832 F.2d 36, 39 (3d Cir.1987).[5] However, in

---

3. Plaintiffs argue that the Declaratory Judgment Act provides this court with subject matter jurisdiction over Plaintiffs' claims. However, the statute provides only that a court may enter a declaratory judgment "[i]n a case of actual controversy *within its jurisdiction....*" 28 U.S.C. § 2201 (emphasis added). Thus, the Act applies only to claims that have an independent basis for jurisdiction.

4. Defendant Bernier also argues that Count VI should be dismissed as to him because Plaintiffs failed to allege that he conducted or participated in an enterprise, as required by section 1962(c). *See Reves v. Ernst & Young,* 507 U.S. 170, 113

S.Ct. 1163, 122 L.Ed.2d 525 (1993); *University of Maryland v. Peat, Marwick, Main & Co.,* 996 F.2d 1534 (3d Cir.1993). However, for purposes of a motion to dismiss, the complaint sufficiently alleges that Bernier knowingly engaged in the direction of CTI's affairs, even though he was employed by ECBM.

5. Although *Barticheck* was decided prior to the Supreme Court's decision in *H.J. Inc.,* the factors continued to be applicable in post-*H.J. Inc.* cases. *See, e.g., Hindes v. Castle,* 937 F.2d 868, 873 (3d Cir.1991); *Banks v. Wolk,* 918 F.2d 418, 423 (3d Cir.1990).

*Tabas,* the court held that the six factors are to be examined only "in those cases where relatedness and continuity are in doubt...." *Tabas,* 47 F.3d at 1296.[6] If, as the court concluded in that case, the plaintiff has presented evidence of continuity, there is no need to examine the applicability of the factors set forth in *Barticheck. Id.*

■ We must therefore determine whether the predicate acts alleged here are related, and whether Plaintiffs have alleged continuity. Predicate acts are "related" if they "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *H.J. Inc.,* 492 U.S. at 240, 109 S.Ct. at 2901, 106 L.Ed.2d at 208 (citation omitted). It is undisputed that the acts alleged in the instant complaint are related. Accordingly, we need only determine whether there is "continuity" among the predicate acts.

■ " 'Continuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Id.* at 241, 109 S.Ct. at 2902, 106 L.Ed.2d at 209 (citing *Barticheck,* 832 F.2d at 39). "It is, in either case, centrally a temporal concept...." *Id.,* 492 U.S. at 241–42, 109 S.Ct. at 2902, 106 L.Ed.2d at 209.

■ Plaintiffs do not allege that the Defendants' activities were tantamount to "closed-ended" continuity taking place over a substantial period of time. Rather, they rely on the "open-ended" concept of continuity. In *Tabas,* the court identified the situations where "open-ended" continuity can exist:

> Under *H.J. Inc.,* if a RICO action is brought before a plaintiff can establish long-term criminal conduct, the "continui-

ty" prong may still be met if a plaintiff can prove a threat of continued racketeering activity. Whether the predicate acts constitute a threat of continued racketeering activity depends on "the specific facts of each case," but *H.J. Inc.* suggests that open-ended continuity may be satisfied "where it is shown that the predicates are a regular way of conducting defendant's ongoing legitimate business ... or of conducting or participating in an ongoing and legitimate RICO 'enterprise.' "

*Tabas,* 47 F.3d at 1295 (citing *H.J. Inc.,* 492 U.S. at 242–43, 109 S.Ct. at 2902) (internal citations omitted). Plaintiffs contend that the Defendants' conduct evinces a threat of continued racketeering activity, and thus "open-ended" continuity has been established.[7] Applying the test set forth in *Tabas,* Plaintiffs in the instant case have sufficiently alleged facts which, if true, could establish "open-ended" continuity.

Plaintiffs contend that to secure the lower insurance premiums the Cappolla Defendants and Bernier entered into an agreement to conceal the existence of leased vehicles from Seneca and Lincoln and knowingly submitted information and documents to Plaintiffs that contained false and fraudulent representations. Significantly, Plaintiffs claim that the Defendants continued their fraud during the life of the Seneca Policy, and repeated the same misrepresentations in securing reduced rates on the Lincoln Policy in 1993. As indicated by Plaintiffs, CTI's insurance contracts were year to year. Based on the Defendants' alleged fraudulent conduct in obtaining the 1992 and 1993 Policies, it is reasonable to assume that but for Plaintiffs' discovery of the fraud, the conduct would have continued into the future.

---

6. Because of the fractured opinion in *Tabas,* it is not entirely clear whether a majority of the court continues to believe, in light of *H.J. Inc.,* that the *Barticheck* factors are ever relevant. *See, e.g., Puricelli v. Estate of Bachman,* No. 95–1713, 1995 WL 447474, * 7 n. 8 (E.D.Pa. July 27, 1995) (noting that four concurring Justices in *Tabas* would have limited or abandoned the *Barticheck* factors); *Heintz v. Electro Methods, Inc.,* No. 94–6916, 1995 WL 405721, * 6 n. 7 (E.D.Pa. June 20, 1995).

7. Plaintiffs also contend that the predicate acts are a regular way of conducting Defendants' ongoing legitimate business, and that this establishes "open-ended" continuity under *Tabas.* Because we conclude that the complaint sufficiently alleges conduct that presents a threat of continued improper conduct, we need not reach this issue.

244

Defendants maintain that there can be no "pattern of racketeering activity" because the alleged scheme's single goal was completed, and thus there is no threat of future harm. They cite *Hindes v. Castle,* 937 F.2d 868 (3d Cir.1991), in support of their argument. In that case the court held the plaintiffs could not satisfy the continuity requirement because the goal of the scheme was complete and not capable of repetition. The "goal" in that case was the election of a co-defendant to a political office. However, the court concluded that there was no threat of future conduct because, by law, the co-defendant was precluded from re-election. *Id.* at 874. There is ample evidence in the instant case to infer that, without detection, Defendants' alleged scheme might have continued indefinitely.

Defendants correctly argue that if the alleged scheme was a single incident, it would likely not implicate RICO. *Banks,* 918 F.2d at 423 (although RICO applies to garden variety fraud case, it does not apply to an isolated instance of such conduct). Here, however, there is more than an isolated instance. Plaintiffs have alleged that Defendants submitted fraudulent application materials to Seneca in June, 1992; submitted fraudulent information during the life of that policy; submitted fraudulent materials to Lincoln in June, 1993; and continued to submit fraudulent information during the coverage period of the Lincoln Policy. This conduct, if true, establishes the necessary continuity for a violation of RICO.

We acknowledge that the conduct alleged to have occurred here amounts to, essentially, fraud. The Third Circuit recognized this fact in *Tabas,* stating that

> our ruling means that RICO, with its severe penalties, may be applicable to many "garden-variety" fraud cases, particularly considering the judiciary's broad interpretation of the mail fraud statute. We are bound, however, by the language of RICO itself and the Supreme Court's instruction that "RICO is to be read broadly." Indeed, the Supreme Court has consistently

struck down efforts by the courts of appeals to narrow RICO's scope.

*Tabas,* 47 F.3d at 1296–97 (internal citations omitted). Accordingly, Defendants' motion to dismiss Count VI for failure to state a claim must be denied.[8]

**B. Motion to Transfer**

 Defendants seek to have this action transferred to the United States District Court for the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1404(a). However, Defendants have not established that the facts "strongly" warrant transfer. *Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879 (3d Cir.1995); *Shutte v. Armco Steel Corp.,* 431 F.2d 22, 25 (3d Cir.1970), *cert. denied,* 401 U.S. 910, 91 S.Ct. 871, 27 L.Ed.2d 808 (1971).

We will issue an appropriate Order.

### ORDER

AND NOW, this 16th day of November, 1995, it is Ordered that the Defendants' motions to dismiss or transfer, filed August 31, 1995, are denied.

---

8. We will exercise supplemental jurisdiction over the remaining claims in Plaintiffs' complaint. 28