**David MORROW and James Whalen, Plaintiffs,**

v.

**Bruce BLACK, Michael Revien, Paul Cohen, Shep Messing, Jerome Ellenbogen, Roger Curylo, Jeffrey Berg, Matthias & Berg, a California Partnership, and John Does 1 through 10.**

**No. 89 CV 3516.**

United States District Court, E.D. New York.

July 3, 1990.

Steven Kimelman, P.C., New York City (James Alexander Burke, of counsel), for David Morrow and James Whalen.

Schneck & Weltman, New York City (Edward Weltman and Warren Nitti, of counsel), for Bruce Black.

Stephen L. Plutzer, Garden City, for Michael Revien.

D'Amato & Lynch, New York City (Robert Kushner and Samuel B. Young, of counsel), for Paul Cohen.

Glynn, Mercep & Persons, Stonybrook (Timothy B. Glynn, of counsel), for Jerome Ellenbogen.

Vincenti & Schickler, New York City (John McEntee, of counsel), for Roger Curylo.

Matthias & Berg, Los Angeles, Cal. (Kenneth M.H. Hoff, of counsel), and Liebowitz, Peterson & Poulson, New York City (Robert Poulson, of counsel), for Jeffrey Berg and Matthias & Berg.

1. The complaint also alleges that defendant Black engaged in unlawful conversion and that defendants Black and Revien are liable on certain surety agreements. Defendant Black has not moved to dismiss the complaint and while defendant Revien has moved to dismiss the complaint Revien's papers do not address the surety issue. Defendants have asserted that if the federal claims are dismissed then this Court has no claims.

2. Claims (v) through (x) allege that defendants engaged in fraudulent misrepresentations with respect to six transactions: (v) Fraudulent Misrepresentation: Bond Scheme, (vi) Fraudulent Misrepresentation: Parking Garage Scheme,

## MEMORANDUM AND ORDER

PLATT, Chief Judge.

Defendants Revien, Cohen, Ellenbogen, Curylo, Berg, and Matthias & Berg move pursuant to Federal Rules 12(b)(6) and 9(b) of Civil Procedure to dismiss plaintiffs' complaint.

Plaintiff's complaint asserts ten claims against all defendants [1]: (i) civil conspiracy to defraud, (ii) violation of Section 1962(c) of the Racketeer Influenced and Corrupt Organizations Act, ("RICO"), i.e., employees or associates of an enterprise which engages in interstate commerce who conduct or participate in that enterprises affairs through a pattern of racketeering, (iii) violation of Section 1962(d) of RICO, i.e., conspiracy to violate RICO, (iv) Section 17 of the Securities Act of 1933, i.e., fraud in the sale of securities, and (v)-(x) fraudulent misrepresentation.[2]

The complaint bases these claims on defendants' alleged participation in six "transactions" with plaintiffs. According to the complaint, the first transaction involved defendants investing $200,000 of plaintiffs money in non-existent Repo Bonds between February and May, 1989. Cmplt ¶ 18–26.

In the second alleged transaction, plaintiffs gave defendants $150,000 in exchange for defendants' enterprise, D.L.Cabot [3], promising to provide $2,350,000 to fund the purchase of a parking garage; plaintiffs' money which was supposed to be held in trust, has not been returned and the purchase was not funded. Cmplt. ¶ 27–38. This transaction took place between March, 1989 and June 26, 1989.

(vii) Fraudulent Misrepresentation: D.K. Investors Scheme, (viii) Fraudulent Misrepresentation: Houston Properties Scheme, (ix) Fraudulent Misrepresentation: Alabama Cattle Scheme, (x) Fraudulent Misrepresentation: Alumni Plumbing Scheme.

3. The complaint alleges that each of the defendants were employed by or associated with the enterprise D.L. Cabot. Cmplt ¶ 1. While some of the defendants contest their particular involvement with the enterprise, none argue that D.L. Cabot does not constitute an enterprise for RICO purposes.

A third transaction, the "D.K. Investors transaction", took place between December 1988 and May, 1989 and involved plaintiffs investing in a private offering of securities. Cmplt. ¶ 39–45. Plaintiffs allegedly made out checks totalling $200,000 payable to D.L. Cabot to invest in the offering but the offering never closed and the money was never returned. Cmplt. ¶ 40, 41 and 45.

In the fourth transaction, plaintiffs gave a deposit of $200,000 payable to D.L. Cabot in reliance upon defendants' promise that D.L. Cabot would fund plaintiffs' purchase of residential property units in Houston, Texas. Cmplt ¶ 46, 47. The $200,000 was not returned to plaintiffs and the checks given plaintiffs in order to fund the deal were returned for insufficient funds. Cmplt. ¶ 47, 48.

The fifth transaction involved a cattle feed operation in Alabama. Cmplt ¶ 50, 51. Plaintiffs executed an assignment to D.L. Cabot of $300,000 supposedly representing money due from the Repo Bond deal and the D.K. Investors transaction. Cmplt ¶ 51. The Alabama cattle deal never took place.

Finally, in the sixth transaction, which took place in May and June, 1989, defendants agreed to make a public offering of plaintiffs' company Alumni Plumbing & Heating Corp. Cmplt ¶ 53. Again plaintiffs assigned to D.L. Cabot money supposedly due from the D.K. Investors deal; there was no return of the money·and the public offering never occurred.[4]

### DISCUSSION

Defendants move pursuant to Federal Rule 12(b)(6) of Civil Procedure to dismiss plaintiffs' claims of (i) civil conspiracy to defraud, (ii) violation of Section 1962(c) of RICO, (iii) violation of Section 1962(d) of RICO, and (iv) violation of Section 17 of the Securities Act of 1933, on the ground that they fail to state a claim upon which relief may be granted. Defendants also move pursuant to Federal Rule 9(b) of Civil Procedure to dismiss plaintiffs claims of (ii)

violation of Section 1962(c) of RICO and (v)-(x) fraudulent misrepresentation on the ground that they fail to plead claims of fraud with requisite particularity.

During oral argument, this Court dismissed pursuant to Federal Rule 12(b)(6) of Civil Procedure plaintiffs' claim (i) for civil conspiracy on the ground that no claim for civil conspiracy to defraud exists in New York. At that time, this Court also ruled that plaintiffs' claims (v)-(x) for fraudulent misrepresentation were sufficiently pled to satisfy the dictates of Federal Rule 9(b) of Civil Procedure and therefore would not be dismissed unless plaintiffs' remaining federal claims are dismissed and no basis exists for ancillary jurisdiction. We now address those federal claims, i.e., claim (ii) brought under Section 1962(c) of the RICO statute, claim (iii) brought under Section 1962(d) of the RICO statute, and claim (iv) brought under Section 17 of the Securities Act of 1933.

A complaint may be dismissed pursuant to Federal Rule 12(b)(6) for failure to state a claim, only if, taking the allegations of the complaint in the light most favorable to the plaintiff, the Court nonetheless concludes that "no relief could be granted under any set of facts that could be proved consistent with the allegations." *H.J. Inc. v. Northwestern Bell Telephone Co.,* —— U.S. ——, 109 S.Ct 2893, 2906, 106 L.Ed.2d 195 (1989) (*quoting Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984)); *see also Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). As the Third Circuit recently emphasized, "this standard of review does not distinguish between RICO and non-RICO claims." *Rose v. Bartle,* 871 F.2d 331, 355 (3rd Cir. 1989).

Plaintiffs in their second claim allege that defendants violated § 1962(c) of the RICO statute. Section 1962(c)[5] of the stat-

---

**4.** The complaint in paragraphs 16–59 lays out the specifics of these transactions.

**5.** Section 1962(c) reads:

It shall be unlawful for any person employed by or associated with any enterprise engaged in or the activities of which affect interstate

ute renders civilly liable any person who being employed by or associated with an enterprise engaged in interstate commerce conducts or participates, directly or indirectly, in the conduct of that enterprise's affairs through a "pattern of racketeering activity".[6] *H.J. Inc. v. Northwestern Bell Telephone Co.,* —— U.S. ——, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989).

In the case at bar, each defendant maintains that plaintiffs' claim under § 1962(c) must be dismissed as against that particular defendant because it does not (i) sufficiently plead that particular defendant's commission of two predicate acts of racketeering[7], (ii) allege that a pattern of racketeering activity existed with respect to that particular defendant's activities, or (iii) allege that any continuity or threat of continuity exists with respect to any of that defendant's purported activities.

Each defendant first argues that since plaintiffs have not sufficiently pled that particular defendant's commission of two predicate acts, plaintiffs' allegations of predicate acts have not met the higher pleading standards as required by Rule 9(b)[8] and hence, plaintiffs can not state a § 1962(c) claim and must be dismissed pursuant to Rule 12(b)(6).

■ The Courts of this Circuit have generally held that when the predicate racketeering acts are acts of fraud as they are here,[9] they must be pled in accordance with the higher pleading requirements of Rule

9(b). *See e.g. In re Crazy Eddie Securities Litigation,* 1989 Fed.Sec.L.Rep. (CCH) 94,507, 1989 WL 56142 (E.D.N.Y.1989); *Gregoris Motors v. Nissan Motor Corporation,* 630 F.Supp. 902, 912 (E.D.N.Y. 1986). Further, the Second Circuit, in *Moss v. Morgan Stanley,* 719 F.2d 5 (2d Cir. 1983) has held that in order to state a claim under Section 1962(c), a plaintiff must allege, *inter alia,* that a defendant has committed two or more predicate acts. *See also H.J. Inc. v. Northwestern Bell Telephone Co.,* —— U.S. ——, 109 S.Ct. 2893, 2897, 106 L.Ed.2d 195 (1989) (where the Court explained that although the RICO statute does not define what is meant by a "pattern" of racketeering activity, it does provide that a pattern "requires" at least two predicate acts of racketeering activity. 18 U.S.C. § 1961(5)).

■ However, the Second Circuit has not yet determined whether one must personally commit the predicate acts or whether one may be held to have committed the predicate acts when one aids and abets another in the commission of the acts. This Court is of the opinion that a person who aids and abets in the commission of two or more predicate acts may be held to have committed the acts for purposes of satisfying this element of a civil § 1962(c) claim even though that person has not personally committed any predicate act. *Accord Petro–Tech, Inc. v. Western Co. of North America,* 824 F.2d 1349 (3rd Cir.

commerce or foreign commerce to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

6. The statute defines "racketeering activity" as any act or threat involving specified state law crimes, any act indictable under various specified federal statutes, and certain federal offenses, including mail fraud (18 U.S.C. § 1341), and wire fraud (18 U.S.C. § 1343). 18 U.S.C. § 1961(1). As discussed below, the statute does not define what is meant by a "pattern" of such activity but does provide that it "requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity. *18 U.S.C. § 1961(5).*

7. Section 1961(5) provides that a pattern of racketeering activity requires at least two acts of racketeering activity.

8. Rule 9(b) provides:

In all averments of fraud or mistake, the circumstances constituting fraud or mistake, shall be stated with particularity. Malice, intent, knowledge and other condition of mind of a person may be averred generally.

9. Here, plaintiffs have alleged that defendants committed acts of mail fraud (18 U.S.C. § 1341), wire fraud (18 U.S.C. § 1343), and fraud in the sale of securities (15 U.S.C. §§ 77q (a) and 77x). Plaintiffs also allege that defendants committed the predicate acts of engaging in monetary transactions in property derived from specified unlawful activity (18 U.S.C. § 1957(d)).

1987) [10]; *Armco Indus. Credit Corp. v. SLT Warehouse Co.*, 782 F.2d 475, 485–86 (5th Cir.1986); *Laterza v. American Broadcasting Co.*, 581 F.Supp. 408, 412 (S.D.N.Y.1984); *see also United States v. Rastelli*, 870 F.2d 822, 832 (2d Cir.1989). Therefore, if the complaint in the case at bar alleges that certain defendants are liable only under a theory of aiding and abetting, then no predicate act would have been personally committed by those defendants and hence, plaintiffs complaint would not have to particularize any predicate acts committed by those defendants.

█ Perhaps in anticipation of such a ruling, each defendant further argues that the complaint does not adequately allege that particular defendant even had any knowledge of the predicate acts. While one can not possibly aid and abet in the commission of an act of which one has no knowledge, here, the complaint adequately alleges that each defendant had knowledge of the predicate acts. Defendants' arguments to the contrary seem based on the premise that the higher pleading requirements of Rule 9(b) apply with equal force to the state of mind of the one committing the fraud as it does to the circumstances of the fraud. However, Rule 9(b) clearly provides that while the *"circumstances* constituting fraud or mistake shall be stated with particularity, malice, intent, *knowledge* and other condition of mind may be averred generally." (emphasis added.)

█ In *Beck v. Manufacturers Hanover Trust Company*, 820 F.2d 46, 50 (2d Cir. 1987), the Second Circuit ruled that while plaintiffs who allege fraud must provide factual allegations which give rise to a 'strong inference' that the defendants possessed the requisite fraudulent intent, "a common method for establishing a strong inference of scienter is to allege facts showing a motive for fraud and a clear opportunity for doing so." The Court explained that "where motive is not apparent, it is still possible to plead scienter by identifying circumstances indicating conscious behavior by the defendant." *Id.* Here, plaintiffs have pled facts which not only indicate motive [11] and opportunity but also conscious behavior by each defendant.[12]

While the complaint will need to meet the standards of Rule 9(b) with regard to the circumstances of the predicate acts of fraud whether or not they were committed with the aid and abetment of other defendants who did not personally commit the act, here, the circumstances [13] of numerous predicate acts, are pled with sufficient particularity.

---

**10.** The Third Circuit explained that an aiding and abetting theory of civil liability would advance the goals of the RICO statute and be in accordance with other applications of aider and abettor liability. *Petro–Tech, Inc. v. Western Co. of North America,* at 1356–58. There, the Court noted that while the aiding and abetting theory is most commonly used as a theory of criminal liability, the circuit courts to have addressed the issue have held that aiders and abettors of securities violations may be civilly liable and that the doctrine also has a civil common law applicability. *Id.*

**11.** Moving defendants' argue that only defendant Black had a motive because he is the only one presently in possession of the money. However, this argument must fail because assuming the fact that defendant Black is presently in possession of the money does not mean that all defendants always intended that only defendant Black benefit and plaintiffs in their complaint maintain that all defendants benefitted.

**12.** For example, defendants Black, Revien, Cohen, and Ellenbogen convinced plaintiff Mor-

row to assign "the return" of the bond deal to D.L. Cabot to invest in another deal in order to conceal that the bond deal was a fraud. Cmplt ¶ 50–51.

Defendant Jeffery Berg called plaintiffs attorney Cotton and represented that the blind pools which would be used to obtain the funds for the parking garage deal were legal and he knew the identities of the investors but could not reveal them. Cmplt ¶ 37–38. He also mailed to D.L. Cabot a private placement memorandum concerning the D.K. Investors offering. Cmplt. ¶ 39. Defendant Berg was a partner in defendant Matthias & Berg. Cmplt ¶ 13.

Defendant Curylo promised to pledge 4,000 cars to obtain the money for the parking garage deal. Cmplt ¶ 35–36. The complaint also notes that he later denied having made such a promise or being involved with D.L. Cabot in any way other than renting it office space. Cmplt ¶ 36.

**13.** This Court considers the circumstance to mean where, when and by whom.

For example, the complaint alleges several acts of mail fraud with the particularity required under Rule 9(b). Mail fraud requires proof of (1) a scheme or artifice to defraud or obtain money by means of false pretenses, representations, or promises; (2) a use of the mails for the purpose of executing the scheme; and (3) a specific intent to defraud either by devising, participating in or abetting the scheme. 18 U.S.C. § 1341. The Second Circuit, in *U.S. v. Bortnovsky*, 879 F.2d 30, 36 (2d Cir.1989), recently explained that to establish mail fraud the plaintiffs must prove: 1) that the defendants "caused" the mailing, i.e., acted "with knowledge that the use of the mails will follow in the ordinary cause of business, or where such use can reasonably be foreseen, even though not actually intended," *citing Pereira v. United States*, 347 U.S. 1, 8–9, 74 S.Ct. 358, 363, 98 L.Ed. 435 (1954), and 2) that the mailing was for the purpose of executing the scheme or, in other words "incident to an essential part of the scheme," *id.* at 8, 74 S.Ct. at 363. Here, the complaint specifically alleges the circumstances of several acts of mail fraud.[14] Since these mailings were certainly foreseeable and incidental to carrying out what plaintiffs allege to be defendants' "schemes", plaintiffs' complaint specifically alleges several predicate acts of mail fraud.

The complaint also sufficiently alleges acts of wire fraud. The pleading requirements for wire fraud under 18 U.S.C. § 1343 are essentially identical to those for mail fraud except that defendants must have used interstate wires for the purpose of executing the alleged schemes. *United States v. Lemire*, 720 F.2d 1327, 1335 n. 7 (D.C.Cir.1983). Here, the complaint specifically alleges three instances of wire fraud.[15] Therefore, in light of this Court's ruling regarding aiding and abetting liability, the complaint sufficiently alleges that at least two predicate acts were committed by each defendant.[16]

Defendants' next argue that plaintiffs' complaint does not allege a "pattern" of racketeering activity with respect to a particular defendant's activity and that even if it is held that plaintiffs complaint meets the other elements of the pattern requirement, it can not meet the continuity element of the pattern requirement with respect to a particular defendant's activity. This argument appears to stem from two sources. The first source seems to be defendants' assumption that each defendant may only be held liable for the predicate acts that he personally committed and not for the acts that he aided and abetted. Such an assumption greatly diminishes the number of acts committed by each defendant and *a fortiori* lessens the possibility that either a "pattern" or "continuity" may exist. However, as discussed above, this Court holds that each defendant is liable for both the predicate acts that he personally committed and those that he aided and abetted. Under such a view, the number of predicate acts from which a pattern or continuity may be established is greatly increased.

---

**14.** The complaint alleges that i) in December, 1988, defendant Berg mailed to D.L. Cabot the D.K. Investors private placement memorandum, cmplt ¶ 39 ii) on or about March 29, defendant Black mailed plaintiffs Morrow and Whalen each a letter confirming the D.K. Investors investment, cmplt ¶ 42, and iii) on or about May 5, 1989 defendants Black and Cohen mailed documents relating to the D.K. Investors transaction, cmplt. ¶ 43.

**15.** On or about June 2, 1989, defendant Black in California telephoned plaintiff Morrow in New York regarding the parking garage transaction. Cmplt ¶ 33.

On or about June 26, 1989, defendant Berg in California twice telephoned plaintiffs' attorney Cotton who was in New York regarding the parking garage scheme. Cmplt. ¶ 37.

**16.** The complaint also alleges predicate acts of securities fraud, (15 U.S.C. §§ 77q(a) and 77x and 18 U.S.C. § 2) and engaging in monetary transactions in property derived from specified unlawful activity (18 U.S.C. § 1957(d)) to wit bank fraud (18 U.S.C. § 1344) and misapplication of funds by a bank employee (18 U.S.C. § 656). Defendants maintain that no sale took place and thus there can be no claim for fraud in the sale of securities and that 18 U.S.C. § 1344 and 656 may not be held to be violated since the bank was not injured by defendants acts. Since this Court holds that the complaint adequately alleges numerous acts of mail and wire fraud, this Court need not now determine whether the complaint also alleges these predicate acts.

■ The second source for defendants' arguments appears to be the recent Supreme Court case of *H.J. Inc. v. Northwestern Bell Telephone Co.*, — U.S. —, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989), and the district court cases which have been decided in its wake. *See e.g. Airlines Reporting Corporation v. Aero Voyagers, Inc.*, 721 F.Supp. 579 (S.D.N.Y.1989); *Reinfield v. Ricklis*, No. 89 6736, Slip Op. (S.D.N.Y.1989). In *H.J. Inc. v. Northwestern Bell Telephone Co.*, — U.S. —, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989), the Supreme Court was confronted with task of "consider(ing) what conduct meets RICO's pattern requirement." *Id.* 109 S.Ct. at 2897. The Court began by explaining that the RICO statute did not define "a pattern of racketeering activity" but only provided that it required at a minimum, at least two acts of racketeering. Therefore, the Court turned to the legislative history for guidance. From the legislative history, the Court determined that a "pattern of racketeering activity" required both "relatedness" between the predicate acts and "continuity or threat of continuity" of the acts. *Id.* at 2900.

In determining what was required under the relatedness element, the Court relied on Title X. The Court explained that a relationship is shown when the criminal acts embrace "the same or similar purposes, results, participants, victims, or methods of commission or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.* at 2901 (quoting 18 U.S.C. § 3575(e)). Here, the relationship component of "pattern" is certainly met. The complaint alleges that defendants engaged in six transactions which all involved the same victims, plaintiffs, similar methods of commission, i.e., encouraging plaintiffs to invest in various "bogus" deals through defendants' enterprise D.L. Cabot and resulted in the same

end, i.e., defrauding plaintiffs of their money.

■ However, as the *H.J. Inc.* Court explained, "relatedness of racketeering activities is not alone enough to satisfy § 1962's pattern element." *Id.* at 2901. "To establish a RICO pattern it must also be shown that the predicates themselves amount to or that they otherwise constitute a threat of *continuing* racketeering activity." *Id.* at 2901. The Court explained that "continuity is both a closed and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Id.* at 2902. (*Citing Barticheck v. Fidelity Union Bank/First National State*, 832 F.2d 36, 39 (3rd Cir. 1987)). The Court further stated that continuity is "centrally a temporal context" and that "predicate acts extending over a few weeks or months and *threatening no future criminal conduct do not satisfy this requirement.*" *Id.* at 2902. (emphasis added).

The Court then provided three examples how one might prove that a set of predicates establishes a threat of continued racketeering activity. The first example involved a "hoodlum" who had sold "insurance" to neighborhood storekeepers to cover them against breakage of windows explicitly told the storekeepers he would reappear each month to collect his premiums. The second involved a situation where the predicate acts were part of an ongoing illegal entity's regular way of doing business and the third involved a situation where the predicate acts were a regular way of conducting an ongoing legitimate[17] business.

While providing these three examples, it seems that the Court did not intend to preclude a plaintiff from showing a threat of continuity by other methods.[18] Indeed, it seems to this Court that the examples given by the *H.J. Inc.* Court were intended

---

**17.** The *H.J. Inc.* Court emphatically reaffirmed its holding in *Sedima, S.P.L.R. v. Imrex Co.*, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985) that RICO applies not only to "mobsters and organized criminals" but also legitimate businesses. *Id.* at 2899.

**18.** Throughout the opinion, the majority emphasizes that they are not establishing a standard test which must be met in every case but rather merely delineating some guidelines.

to be the least controversial examples of when predicate acts lasting only a few weeks could establish continuity in an effort to make clear that a single scheme lasting only a few weeks should not be automatically discounted. In this light, the Court had explained earlier that while "proof that a RICO defendant has been involved in multiple criminal schemes would *certainly be highly relevant to the inquiry into the continuity* of the defendant's racketeering activity," proof of multiple schemes is not the exclusive method of showing "continuity." *Id.* at 2901. (emphasis added).

Some have read the *H.J. Inc.* decision to mean that a party alleging a RICO violation which in actuality only lasts a few weeks or months may never satisfy the pattern requirement. In fact, Justice Scalia, in his concurrence, stated that "I think (the majority opinion) must be saying that at least a few months of racketeering activity (and who knows how much more) is generally for free, as far as RICO is concerned."[19] However, the specific holding of the *H.J. Inc.* Court is that only those "predicate acts extending over a few weeks or months and threatening *no* future criminal activity" are unable to constitute a RICO violation.

 Hence, in this Court's opinion, racketeering activity which in actuality extend over a few weeks only but *at the time of occurrence*[20] threatens *any* future criminal activity satisfies the continuity requirement. It is significant that the *H.J. Inc.* Court began its discussion by emphasizing that "Congress envisioned circumstances in which no more than two predicate acts would be necessary to establish a pattern of racketeering—otherwise it would have drawn a narrower boundary to RICO liability, requiring proof of a greater number of predicates."[21] *Id.* at 2899. Further, in the

only circuit court decision cited by the majority on this issue, the Third Circuit explained that "continuity" may not compel a requirement of openendedness if such an approach "would allow a party to maintain a RICO claim if he brought suit before the unlawful scheme had obtained its objective" while denying a RICO claim where the "scheme had fully accomplished its goal" despite the fact "it is the completed scheme that inflicts the greater harm and more strongly implicates the remedial purposes of RICO." *Barticheck v. Fidelity Union Bank/First National State*, 832 F.2d 36, 39.

 Moreover, it seems to this Court that at the time the racketeering activity takes place this threat of future criminal activity may be either explicit or implicit and may be proven in a variety of ways. That racketeering activity lasts in actuality only a few weeks and then is ceased because the participants are found out would not necessarily mean that at the time the activity took place, it had not threatened future criminal activity. Indeed, even if the racketeering activity was *voluntarily* stopped after a few weeks or months, it might still have had threatened future criminal activity depending on why defendants decided to discontinue the acts. Of course, racketeering acts which take place pursuant to a one specific business transaction and that transaction necessarily lasts only a few months would probably not evidence an explicit or implicit threat of continuity. *See Continental Realty Corp. v. J.C. Penney*, 729 F.Supp. 1452 (S.D.N.Y. 1990).

In the case at bar, plaintiffs have alleged predicate acts which while in actuality only lasted at most a few months, threatened future criminal activity. Here, according to the complaint, defendants engaged in one scheme after another. In fact, accord-

---

**19.** It seems Justice Scalia overstates the majority opinion to emphasize his belief that the RICO statute may be void for vagueness.

**20.** It seems to this Court that the question is whether the activity threatened future activity at the time of its occurrence. That hindsight proves that the defendants are found out after a

few weeks would not alter the conclusion that the activity threatened future activity at the time of its occurrence.

**21.** This Congressional vision is derived directly from the statute rather than from the legislative history.

ing to the complaint, defendants created new schemes to prevent the previous schemes from being discovered.[22] While plaintiffs may not be able to prove these allegations, on a motion to dismiss this Court must accept the allegations as true. In this Court's opinion, if these allegations were proven, the "continuity" of defendants acts would be adequately established.

Plaintiffs in their third claim allege that defendants violated § 1962(d) of the RICO statute. Section 1962(d) renders liable any person who "conspires" to commit a RICO violation.[23] Defendants maintain that plaintiffs' complaint fails to state such a claim and should be dismissed pursuant to Federal Rule 12(b)(6).

The Second Circuit has held that while a defendant need not actually commit two predicate acts, a defendant must agree either to commit or to aid and abet in the commission of two predicate acts himself. *United States v. Rastelli,* 870 F.2d 822, 832 (2d Cir.1989). The defendant's agreement may be inferred from circumstantial evidence of his status in the enterprise and his knowledge of the wrongdoing. *United States v. Teitler,* 802 F.2d 606, 614 (2d Cir.1986). Here, plaintiff's complaint alleges numerous facts with regard to each defendant from which a reasonable trier of fact may find that each defendant conspired to violate the RICO statute.[24] While plaintiffs may not be able to prove these facts, on a motion to dismiss we must accept that plaintiff will prove these facts.

Plaintiffs' fourth claim alleges that defendants violated Section 17 of the Securities Act of 1933. Defendants argue that there is no private cause of action under Section 17 and hence, plaintiffs Section 17 claim must be dismissed pursuant to Federal Rule 12(b)(6) of Civil Procedure.

In *Kirshner v. United States,* 603 F.2d 234 (2d Cir.1979), the Second Circuit held that a private cause of action exists under Section 17. However, as explained by my esteemed colleague Judge Reena Raggi in *Lazzaro v. Manber,* 701 F.Supp. 353, 366 (E.D.N.Y.1988), the *Kirshner* Court relied on an "assumed similarity [25] between the elements of § 10(b) and a § 17(a) cause of action (which) has begun to erode." While the Second Circuit, in recent years, has declined to take a position as to the existence of a § 17(a) cause of action the district courts in this circuit have held that no private cause of action exists under Section 17. *Lazzaro,* at 366. In *Ackerman v. Clinical Data, Inc.,* 1985 Fed.Sec.L.Rep. (CCH) 91, 566, 91, 570 (S.D.N.Y.1985), Judge Charles Haight reasoned that to imply a private right of action under 17(a) exists as a kind of companion action to one brought under Section 10(b) would "allow and encourage the total circumnavigation of the new restrictions the court has placed on a Section 10(b) cause of action." *Id.* (*quoting Kimmel v. Peterson,* 565 F.Supp. 476, 485 (E.D. Pa.1983)) and that the "carefully constructed framework of the securities laws" worked against an implied right of action under Section 17(a).

This Court is persuaded by the reasoning in *Lazzaro* and *Ackerman* and therefore plaintiffs' claim brought under Section must be and hereby is dismissed on the ground no private cause of action exists under Section 17(a).

In conclusion, this Court denies defendants' motions to dismiss plaintiffs' RICO claims brought under Section 1962(c) and

---

**22.** For example, in May, 1989, defendant Cohen had plaintiff Morrow execute an assignment to D.L. Cabot of $300,000 supposedly representing money due on the second bond deal and the D.K. Investors deal to fund a Trust Account deposit for the Alabama Cattle deal. Cmplt ¶ 51.

**23.** Section 1962(d) reads:
It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b) or (c) of this section.

**24.** As discussed above, the complaint alleges many facts demonstrating each defendant's participation in the enterprise and knowledge of the wrongdoing. See footnote 12.

**25.** In *Lazzaro,* the Court explained that this assumed similarity stemmed from Judge Friendly's observation in *SEC v. Texas Gulf Sulphur Co.,* 401 F.2d 833, 867 (2d Cir.1968) (Friendly, J. concurring) cert. denied, 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969).

Section 1962(d) and grants defendants' motions to dismiss plaintiffs claim brought under Section 17(a) of the Securities Act of 1934.

SO ORDERED.