## RUBY DEVELOPMENT CORP., Plaintiff,

v.

## CHARRIM DEVELOPMENT CORPORATION, Rima Bruzas and Charles Dinolfo, Defendants.

### No. 90 CV 90(TCP).

United States District Court,
E.D. New York.

July 10, 1990.

---

Delligatti, Kaschak, Julius & Kain, Mineola, N.Y., for plaintiff.

Gellert & Cutler, P. C., Poughkeepsie, N. Y., for defendants.

## MEMORANDUM AND ORDER

PLATT, Chief Judge.

Plaintiff commenced this suit on January 10, 1990 seeking treble damages, costs and attorneys fees for defendants' alleged violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* Defendants move to dismiss plaintiff's complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction, Rule 12(b)(6) for failure to state a claim on which relief may be granted, and Rule 9(b) for failure to allege fraud with sufficient particularity. Defendants also move for sanctions pursuant to Rule 11. For the reasons stated below defendants' motion to dismiss is granted and defendants' motion for Rule 11 sanctions is denied.

## RELEVANT BACKGROUND

On October 14, 1986 plaintiff sold 83 acres of property in Ulster County, New York to defendant Charrim Development Corporation ("Charrim") [1]. Charrim paid plaintiff $180,000 in cash and gave plaintiff a purchase money mortgage for the remaining $639,000. Among other conditions of the sale plaintiff contracted to develop the property. In addition, defendants represented that they would obtain financing for said development. In the event that defendants could obtain financing (i.e. a construction loan) plaintiff agreed that he would authorize the subordination of his $639,000 purchase money mortgage to the

---

**1.** Plaintiff upon information and belief represents that the sole shareholders of defendant corporation Charrim, are defendants Charles Dinolfo and Rima Bruzas.

lender. Upon receipt of the first payment of monies from the lender, defendants were to pay plaintiff $202,800 for work already completed.

"Certain difficulties arose" (¶ 15 of complaint) and plaintiff filed a breach of contract action against corporate defendant Charrim in the Supreme Court of Nassau County ("Nassau Contract Case"). Charrim defaulted.

On or about April 12, 1988, subsequent to Charrim's default in the Nassau Contract Case, defendant Charles Dinolfo mailed a letter to plaintiff alleging that they had received a "commitment" for financing from Morsemere Federal Savings & Loan Association ("Morsemere")[2]. (¶ 28). Thereafter, defendants sent plaintiff, by mail, additional communications which contained additional alleged fraudulent representations concerning defendants' "commitment" from Morsemere.

Thereafter, defendants' counsel sent plaintiff's counsel a letter dated May 6, 1988. The letter stated that failure to authorize subordination of the $639,000 purchase money mortgage would result in defendants' failure to obtain financing.(¶ 29)

On May 16, 1988 corporate defendant Charrim filed an action in Ulster County Supreme Court to direct plaintiff to authorize subordination ("Ulster County Case"). Under the cover of a letter dated May 19, 1988, defendant's counsel forwarded copies of their pleadings in the Ulster County Case to plaintiff's counsel. Charrim's pleadings included several representations that defendants had received a loan "commitment" from Morsemere.(¶ 30–¶ 35).

Subsequent to further communications between the parties they came to an agreement. On or about July 1, 1988, defendants' counsel sent to plaintiff's counsel copies of a proposed Order with Notice of Settlement and a copy of an undertaking from Aetna Casualty & Surety[3] in the Ulster County Case. The proposed order directed the authorization of subordination of the purchase money mortgage "as may be required by Morsemere ... in connection with the construction loan financing." (¶ 38–¶ 39).

Under the cover of a letter dated July 15, 1988, defendants' counsel sent to plaintiff's counsel additional copies of subordination documents for plaintiff's signature. The letter also stated that plaintiff's "refusal to sign these documents has, and continues to, impede [defendants'] ability to process the financing necessary to the success of this project."(¶ 36–¶ 37).

On July 18, 1988 Ulster County Supreme Court Judge Joseph Torraca directed plaintiff to authorize the subordination to Morsemere.[4]

On or about August 31, 1988 defendants' counsel mailed a copy of an Order to Show Cause filed in Ulster County which sought to discharge the bond of Aetna Casualty and Surety Co.[5] (¶ 44).

On or about December 22, 1988 defendants' counsel mailed a letter to the Ulster County Court which stated that "construction financing was not granted." Said letter further stated that defendants had, however, been loaned $300,000 which did *not* require the subordination of plaintiff's purchase money mortgage.(¶ 48–¶ 49). In an order dated January 27, 1989, the Court ordered that the bond be discharged.(¶ 50).

Plaintiff claims that 1) defendants never obtained financing for the development of the property, 2) the $639,000 purchase money mortgage is subordinated to a $300,000 personal loan made to defendants by Morsemere which is unrelated to the development, 3) defendants fraudulently obtained

---

2. According to plaintiff, once plaintiff learned of defendant's alleged loan "commitment", the parties stipulated to withdraw the Nassau Contract Case. Plaintiff further claims that the stipulation was vacated when the fraud alleged in this case was presented to the Nassau Court. The alleged fraud being defendant's representation to plaintiff that defendant had received a loan "commitment" from Morsemere.

3. Defendants subsequently sought and had the Aetna bond discharged.(¶ 44–¶ 50).

4. On August 10, 1988 defendants' counsel sent plaintiff's counsel a copy of said order. (¶ 41–42).

5. The bond having originally been filed when the Ulster County Case was settled.

the authorization of subordination, 4) defendants have fraudulently obtained the discharge of the Aetna bond which was originally contemplated as security for the authorization of subordination and 5) that defendants' mailings constitute a pattern of racketeering which includes at least two or more acts of mail fraud under 18 U.S.C. § 1341.

## DISCUSSION

Defendants move to dismiss plaintiff's complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Defendants claim, *inter alia*, that plaintiff has failed to establish a RICO claim and without that claim, this Court is without subject-matter jurisdiction.

■ A complaint may be dismissed pursuant to Rule 12(b)(6) for failure to state a claim, only if, taking the allegations of the complaint in the light most favorable to the plaintiff, the Court nonetheless concludes that "no relief could be granted under any set of facts that could be proved consistent with the allegations." *H.J. Inc. v. Northwestern Bell Telephone Co.,* — U.S. —, 109 S.Ct. 2893, 2906, 106 L.Ed.2d 195 (1989) (*quoting Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984)). As the Third Circuit recently emphasized, "this standard of review does not distinguish between RICO and non-RICO claims." *Rose v. Bartle,* 871 F.2d 331, 355 (3rd Cir.1989).

The RICO statute renders civilly liable persons (i) who use or invest income derived from a pattern of racketeering activity to acquire an interest in or to operate an enterprise engaged in interstate commerce, § 1962(a); (ii) who acquire or maintain an interest in or control of such an enterprise through a pattern of racketeering activity, § 1962(b); (iii) who, being employed by or associated with such an enterprise, conduct or participate in the conduct of that enterprise's affairs through a pattern of racketeering activity, § 1962(c).

■ Defendants claim, *inter alia*, that plaintiff has failed to adequately allege a "pattern of racketeering activity." [6] At a minimum a "pattern of racketeering activity requires at least two acts of racketeering activity." 18 U.S.C. § 1961(5).[7] The broad nature of this standard resulted in the Supreme Court's attempt at clarification in *H.J. Inc. v. Northwestern Bell Telephone Co.,* — U.S. —, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). The Court held in *H.J. Inc.* that a pattern of racketeering involves a "more stringent requirement than proof simply of two predicates." *Id.* 109 S.Ct. at 2899.

The Court, relying on the text of the statute and legislative history, held that to prove a pattern of racketeering activity a plaintiff "must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *Id.* at 2900. Although the proof of relatedness and continuity will often overlap, the Court counseled that they must be stated separately. *Id.*

The predicate racketeering acts are related if they "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.* at 2901. Defendants' mailings apparently all had the same purpose, result, participants and victim—to wit, to represent that defendants had received a loan "commitment" from Morsemere and thereby to convince the plaintiff voluntarily to authorize subordination of its purchase money mortgage or to persuade the Ulster County Supreme

---

6. Defendants also claim that plaintiff has failed to mention RICO by name in the complaint, that plaintiff's claim is really for breach of contract, that plaintiff has failed to allege fraud with sufficient particularity and that plaintiff has failed to allege an enterprise.

While it is logically incorrect to consider whether plaintiff has properly alleged a pattern of racketeering without first considering whether plaintiff has sufficiently alleged the predicate acts, we will assume that plaintiff has properly alleged the predicates (without *arguendo* making any ruling thereon) and consider first whether plaintiff has properly alleged a pattern of racketeering activity.

7. Racketeering activity includes acts of mail fraud in violation of 18 U.S.C. § 1341. 18 U.S.C. § 1961(1).

Court Judge to "so order" such authorization. Defendants' alleged racketeering acts were, therefore, sufficiently related.

To establish adequately a "pattern of racketeering activity" plaintiff must also show "that the predicates themselves amount to, or that they otherwise constitute a threat of *continuing* racketeering activity." *Id.* While the Court in *H.J., Inc.* recognized that to formulate a general test for continuity is difficult it did provide us with some guidance;

> "Continuity is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition."

*Id.* 109 S.Ct. at 2902.

In this case plaintiff has alleged no more than a single scheme [8] which took place over a finite period of eight months—from defendant Dinolfo's April 12, 1988 letter until the December 22, 1988 letter to the Ulster County Court seeking discharge of the Aetna bond.

Unlike the plaintiff's allegations in our recent decisions in *Morrow v. Black,* 742 F.Supp. 1199, (1990) and *Norstar v. Pepitone,* 742 F.Supp. 1209, (1990) there are no allegations that constitute a basis from which one may find or infer a threat of future or continuing criminal conduct.[9] See also *Continental Realty Corp. v. J.C. Penny,* 729 F.Supp. 1452 (S.D.N.Y.1990) where the Court held that where the complaint alleged acts of fraud in one real estate transaction and did not refer to other unrelated previous acts of similar fraud nor alleged facts indicating that defendants would engage in similar conduct in the future, it alleged a closed-ended RICO violation.

■ Moreover, it is not sufficient to claim that allegations of concealment on the part of the wrongdoer constitute a basis for establishing an open-ended scheme or threat of repetition to satisfy the continuity requirement. Otherwise every past act of wrongdoing which a wrongdoer attempts to conceal might be the basis for finding continuity.[10] Therefore, there is no basis on which to establish an open-ended scheme as there was in the *Morrow* and *Norstar* cases.

The *H.J. Inc.* Court held that a party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a "substantial period of time." Thus the only remaining question is whether the eight month period in the case at bar is a "substantial period of time" within the meaning of this portion of the *H.J. Inc.* decision. Under the circumstances presented here, this Court is of the opinion that the eight month period, over which the alleged mail fraud activity took place in this case, is not in and of itself a sufficient period on which to base a finding of long term criminal conduct. *See e.g. USA Network v. Jones Intercable,* 729 F.Supp. 304 (S.D.N.Y.1990); *Continental Realty Corp v. J.C. Penny,* 729 F.Supp. 1452 (S.D.N.Y. 1990).

Plaintiff's RICO claims are dismissed pursuant to Rule 12(b)(6) for failure to state a claim because defendant has not adequately alleged that defendants have engaged in a pattern of racketeering activity. Without this federal claim, plaintiff's

---

**8.** The Supreme Court has held that while multiple schemes may be probative on the issue of whether continuity exists, proof of multiple schemes is not required to show continuity. *Id.* 109 S.Ct. at 2901.

**9.** As this Court recently explained in *Morrow v. Black,* 742 F.Supp. 1199 (1990), in open-ended cases, related predicate acts which *do not* extend over a substantial period of time, but *do,* at the time of their occurrence, threaten *any* future criminal activity will satisfy the continuity requirement. This Court further explained that the threat may be implicit or explicit and may be proven in a variety of ways.

**10.** This analysis is supported by the fact that Statute of Limitations in a criminal case does not begin to run if conduct "done in furtherance of the *main* criminal objectives" takes place. *Grunewald v. United States,* 353 U.S. 391, 405, 77 S.Ct. 963, 974, 1 L.Ed.2d 931 (1957). On the other hand, conduct "done after these central objectives have been attained, for the purpose of covering up the crime" does not toll the running of the Statute. *Id.*

complaint is dismissed for lack of subject matter jurisdiction.

Defendants' motion for Rule 11 sanctions is denied.

SO ORDERED.

The Clerk of the Court is directed to enter a judgement for the defendants and against the plaintiff dismissing plaintiff's complaint.