**NORSTAR BANK, Plaintiff,**

v.

**James A. PEPITONE, Lawrence Amaturo, Marina Del Mar, Inc., and Rivkin, Radler, Dunne & Bayh, Defendants.**

**No. 89 CV 4257.**

United States District Court,
E.D. New York.

July 17, 1990.

Cleary, Gottlieb, Steen & Hamilton, New York City, for plaintiff.

Hall, Dickler, Lawler, Kent & Friedman, New York City, for defendants Pepitone and Marina Del Mar, Inc.

## AMENDED MEMORANDUM AND ORDER

PLATT, Chief Judge.

Defendants James A. Pepitone and Marina Del Mar move to dismiss plaintiff's complaint pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure. Plaintiff's complaint claims that (i) defendant Pepitone violated the Racketeer Influenced and Corrupt Organizations Act, ("RICO")[1], (ii) defendant Pepitone committed fraud, (iii) defendant Pepitone committed conversion, (iv) a constructive trust should be applied to certain funds in defendant Pepitone's possession, and (v) defendant Pepitone was the alter ego of Portjeff Development Corporation. In this motion, defendants primarily contest plaintiff's RICO claims[2] arguing that if plaintiff's RICO claims are dismissed, then this Court has no subject matter jurisdiction over plaintiff's other claims and hence, the entire complaint should be dismissed. For the reasons stated below, this Court holds that plaintiff's RICO claims may stand and thus we need not address whether this Court would have subject matter jurisdiction based on diversity.

---

1. Plaintiff alleges three claims against defendant Pepitone under the RICO statute. It alleges that defendant Pepitone violated Sections 1962(c), (a), and (d).

2. Defendant Pepitone also argues that he may not be held liable for those acts he undertook as a corporate officer. However, defendant Pepitone's RICO liability is not altered by the fact he committed these acts as a corporate officer and hence need not be determined at this time.

## BACKGROUND

In September, 1985, plaintiff Norstar agreed to lend Portjeff Development Corporation fourteen million dollars for the construction of condominium units as part of a real estate development called Fox Meadow. Defendant Pepitone is the president of Portjeff Development Corporation.

This "Fox Meadow loan" involved plaintiff making two advancements, the first in October, 1985 and the second in December, 1985. Both advances are secured by mortgages on the real property owned by Portjeff Corporation. The mortgages create a lien in plaintiff's favor in each condominium unit to be built and sold at the project. Defendant Pepitone signed the documents underlying the loan in his capacity as President.

The loan was to be repaid, in part with the closing proceeds from the sale of the condominium units. Pending the closing of an individual condominium unit, plaintiff was to deliver a release of its lien on that unit to defendant Rivkin, Radler, Dunne, and Bayh, ("Rivkin Radler") which was to hold the release in escrow pending the closing. After the closing, defendant Rivkin Radler was to pay plaintiff a portion of the sales price as repayment on the loan. Following this procedure, Portjeff has repaid over eighty percent of the loan.

In March, 1989, certain creditors of Portjeff filed an involuntary bankruptcy petition against Portjeff. In April, 1989 that proceeding was converted into a voluntary Chapter 11 proceeding by Portjeff.

In December, 1989, plaintiff filed this suit. In its complaint, plaintiff alleges that beginning in June, 1987, defendants Pepitone and Amaturo got defendant Rivkin, Radler to permit Portjeff to obtain the full closing proceeds without simultaneously making a loan payment to Norstar. The payment was delayed from a few days to a couple of weeks. The complaint alleges that this occurred approximately 60 times. According to the complaint, in the interim between the closing and the payment, defendants Pepitone and Amaturo would divert the funds to defendant Pepitone's other businesses, defendant Marina Del Mar, Inc. and Hampton Bays.

The complaint further alleges that between September, 1988 and February, 1989, closings on 22 condominium units had occurred for which releases were given but for which the loan payments were never received. According to the complaint, defendants permanently converted 2.5 million in loan payments which belongs to plaintiff.

## DISCUSSION

Defendants move pursuant to Federal Rules 12(b)(6) and 9(b) of Civil Procedure to dismiss plaintiff's RICO claims. Defendants argue that plaintiff has failed to state any RICO claim because (i) its complaint does not allege a "pattern of racketeering" and (ii) the predicate acts of fraud have not been sufficiently pled. Defendants further argue that even if plaintiff has stated claims under the RICO statute, they must be dismissed because the RICO statute is unconstitutional.

A complaint may be dismissed pursuant to Federal Rule 12(b)(6) for failure to state a claim, only if, taking the allegations of the complaint in the light most favorable to the plaintiff, the Court nonetheless concludes that "no relief could be granted under any set of facts that could be proved consistent with the allegations." *H.J. Inc. v. Northwestern Bell Telephone Co.,* —— U.S. ——, 109 S.Ct. 2893, 2906, 106 L.Ed.2d 195 (1989) (*quoting Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984)); *see also Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). As the Third Circuit recently emphasized, "this standard of review does not distinguish between RICO and non-RICO claims." *Rose v. Bartle,* 871 F.2d 331, 355 (3rd Cir. 1989).

The RICO statute renders civilly liable persons (i) who use or invest income derived from a "pattern of racketeering activity" to acquire an interest in or operate the enterprise engaged in interstate commerce,

18 U.S.C. § 1962(a)[3], (ii) who acquire an interest in or control such an enterprise "through a pattern of racketeering", 18 U.S.C. § 1962(b), (iii) who as employees or associates of such an enterprise, conduct or participate in the conduct of that enterprise's affairs "through a pattern of racketeering activities", 18 U.S.C. § 1962(c)[4], or (iv) who conspire to violate any of those prohibited activities, 18 U.S.C. § 1962(d).

Plaintiff in its complaint alleges that defendants Pepitone and Amaturo (i) used income derived from a pattern of racketeering activity to operate an enterprise engaged in interstate commerce in violation of Section 1962(a)[5], (ii) were employees and associates of an enterprise engaged in interstate commerce and conducted that enterprise's activities through a pattern of racketeering in violation of Section 1962(c)[6], and (iii) conspired to violate Sections 1962(a) and (c)[7]. Defendants argue that plaintiff's complaint fails to allege a "pattern of racketeering" and hence fails to state any RICO claim. Specifically, defendants contend that plaintiff has not alleged evidence of continuity or threat of continuity as required by the recent Supreme Court case of *H.J. Inc. v. Northwestern Bell Co.,* — U.S. ——, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989) and thus can not allege a pattern of racketeering.

As this Court has recently explained in *Morrow, et al. v. Black, et al.,* 742 F.Supp. 1199 (E.D.N.Y.1990), the Supreme Court in *H.J. Inc.* held that only those "predicate acts extending over a few weeks or months and threatening no future criminal activi-

ty" are unable to constitute a RICO violation and thus, related predicate acts which in actuality extend only over a few weeks but at the time of their occurrence threaten *any* future criminal activity will satisfy the continuity requirement. *Morrow,* at 1206. This Court also explained that the threat may be either explicit or implicit and may be proven in a variety of ways. *Morrow,* at 1206.

Here, plaintiff's complaint adequately alleges a threat of future criminal activity to survive a motion to dismiss. The complaint alleges eleven predicate acts of mail fraud between the dates of July 15, 1987 and January 24, 1989. Defendants maintain that the mailings which occurred between July, 1987 and August, 1988 should not be considered because plaintiff concedes that these mailings did not foster a scheme to defraud plaintiff of its money permanently but only to temporarily misappropriate the money and hence the predicate acts could only extend at most from August, 1988 to December, 1988. This Court is inclined to view the earlier temporary misappropriations as setting the groundwork for the later misappropriations and hence mailings in furtherance of the temporary misappropriations were also in furtherance of the later permanent misappropriations. However, even if the earlier mailings were not considered predicate racketeering acts, it seems to this Court that plaintiff has alleged sufficient evidence of continuity to survive a motion to dismiss. As stated above, when the predicate acts only last a few weeks in actuality

---

**3.** Section 1962(a) reads in pertinent part:

It shall be unlawful for any person who has received income derived directly or indirectly from a *pattern of racketeering activity* ... to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce. (emphasis added).

**4.** Section 1962(c) reads:

It shall be unlawful for any person employed by or associated with any enterprise engaged in or the activities of which affect interstate commerce or foreign commerce to

conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

**5.** In paragraphs 37–43, plaintiff alleges that defendant Pepitone received money through a pattern of racketeering and used this money to invest and/or operate Portjeff, Hampton Bays and defendant Marina Del Mar which engaged in interstate commerce.

**6.** In paragraphs 24–36, plaintiffs allege that defendants Pepitone and Amaturo conducted or participated in the affairs of Portjeff through a pattern of racketeering.

**7.** See paragraphs 44–48 of complaint.

but at the time of their occurrence threaten future criminal activity, the continuity requirement is met. Here, plaintiff's complaint alleges that defendants were regularly misappropriating the loan payments due on the condominium units that had closed and that this activity implicitly threatened to continue until each and every condominimun unit had been sold. Further, the complaint alleges that defendants were involved in other business transactions with other victims in which they engaged in this type of activity [8]; such allegations if proven would also demonstrate an implicit threat of future criminal activity. While plaintiff may not be able to prove these allegations, on a motion to dismiss this Court must accept them as true.[9] That defendants are presently in bankruptcy court in no way alters the conclusion that the racketeering acts may have threatened future criminal activity at the time they occurred. *See Barticheck v. Fidelity Union Bank/First National State*, 832 F.2d 36, 39 (3rd Cir.1987) [10]. Therefore, plaintiff has sufficiently alleged a threat of continuity to constitute a pattern of racketeering and hence plaintiff's RICO claims may not be dismissed pursuant to Federal Rule 12(b)(6) of Civil Procedure.

■ Defendant next argues that plaintiff's RICO claims should be dismissed pursuant to Federal Rule 9(b) of Civil Procedure [11] because plaintiff failed to allege the predicate acts of mail fraud with sufficient particularity and without pleading the predicate acts with sufficient particularity, plaintiff can not state a claim. The Courts of this Circuit have generally held that when the predicate racketeering acts are acts of fraud as they are here,[12] they must be pled in accordance with the higher pleading requirements of Rule 9(b). *See e.g. In re Crazy Eddie Securities Litigation*, 1989 Fed. Sec. L.Rep. (CCH) 94,507 (E.D.N.Y.1989); *Gregoris Motors v. Nissan Motor Corporation*, 630 F.Supp. 902, 912 (E.D.N.Y.1986). Further, the Second Circuit, in *Moss v. Morgan Stanley*, 719 F.2d 5 (2d Cir.1983) has held that in order to state a claim under Section 1962(c), a plaintiff must allege, *inter alia*, that a defendant has committed two or more predicate acts. *See also H.J. Inc. v. Northwestern Bell Telephone Co.*, —— U.S. ——, 109 S.Ct. 2893, 2897, 106 L.Ed.2d 195 (1989) (where the Court explained that although the RICO statute does not define what is meant by a "pattern" of racketeering activity, it does provide that a pattern "requires" at least two predicate acts of racketeering activity. 18 U.S.C. § 1961(5)).

Here, plaintiff's complaint sufficiently alleges several predicate acts of mail fraud. Defendants' arguments to the contrary seem based on the premise that the higher pleading requirements of Rule 9(b) apply with equal force to the state of mind of the one committing the fraud as it does to the circumstances of the fraud. However, Rule 9(b) clearly provides that while the *"circumstances* constituting fraud or mistake shall be stated with particularity, malice, intent, *knowledge* and other condition of mind may be averred generally." (emphasis added.)

In *Beck v. Manufacturers Hanover Trust Company*, 820 F.2d 46, 50 (2d Cir.

---

**8.** At paragraphs 30–31, the complaint alleges that defendants Pepitone and Amaturo engaged in a similar scheme to misappropriate the closing proceeds due a bank lender that had financed a different condominium construction project in Ossining, N.Y.

**9.** Also, it seems to this Court that the mandate of Rule 11 sanctions would prevent a defendant from alleging similar unrelated incidents which were completely unfounded.

**10.** In *Barticheck,* the Court explained that "continuity" may not compel a requirement of openendedness if such an approach "would allow a party to maintain a RICO claim if he brought suit before the unlawful scheme had obtained

its objective" while denying a RICO claim where the "scheme had fully accomplished its goal" despite the fact "it is the completed scheme that inflicts the greater harm and more strongly implicates the remedial purposes of RICO."

**11.** Rule 9(b) provides:

In all averments of fraud or mistake, the circumstances constituting fraud or mistake, shall be stated with particularity. Malice, intent, knowledge and other condition of mind of a person may be averred generally.

**12.** Here, plaintiff has alleged that defendants committed acts of mail fraud (18 U.S.C. § 1341).

1987), the Second Circuit ruled that while plaintiffs who allege fraud must provide factual allegations which give rise to a 'strong inference' that the defendants possessed the requisite fraudulent intent, "a common method for establishing a strong inference of scienter is to allege facts showing a motive for fraud and a clear opportunity for doing so." The Court explained that "where motive is not apparent, it is still possible to plead scienter by identifying circumstances indicating conscious behavior by the defendant." *Id.* Here, plaintiff has pled facts which not only indicate motive [13] and opportunity but also conscious behavior by defendant Pepitone.[14]

The circumstances [15] of sufficient predicate acts of mail fraud are pled with sufficient particularity. Mail fraud requires proof of (1) a scheme or artifice to defraud or obtain money by means of false pretenses, representations, or promises; (2) a use of the mails for the purpose of executing the scheme; and (3) a specific intent to defraud either by devising, participating in or abetting the scheme. 18 U.S.C. § 1341. The Second Circuit, in *U.S. v. Bortnovsky*, 879 F.2d 30, 36 (2d Cir.1989), recently explained that to establish mail fraud a plaintiff must prove: 1) that the defendants "caused" the mailing, i.e, acted "with knowledge that the use of the mails will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended," *citing Pereira v. United States*, 347 U.S. 1, 8-9, 74 S.Ct. 358, 362-63, 98 L.Ed. 435 (1954), and 2) that the mailing was for the purpose of executing the scheme or, in other words "incident to an essential part of the scheme," *id.* at 8, 74 S.Ct. at 362-63. Here, the complaint specifically alleges the circumstances of several acts of mail fraud.[16] Since these mailings were certainly foreseeable and incidental to carrying

out what plaintiff alleges to be defendants' fraud, plaintiff's complaint specifically alleges sufficient predicate acts of mail fraud.

Finally, defendants argue that plaintiff's RICO claims must be dismissed because the RICO statute is unconstitutional. Justice Antonin Scalia in his concurrence in the *H.J. Inc.*, —— U.S. ——, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989) did invite such a challenge to the constitutionality of the RICO statute. It seems Justice Scalia strongly disapproves of the majority's use of legislative history to clarify the RICO statute. However, Courts have often relied on legislative history to interpret broad statutory language. Indeed, a majority of Supreme Court justices did just that in the *H.J. Inc.* decision. Therefore, this Court believes that it would be presumptuous for it to hold the RICO statute unconstitutional at this time.

SO ORDERED.

---

**13.** Plaintiff's complaint alleges that defendant Pepitone diverted the money to his other companies.

**14.** For example, the complaint alleges that defendant Pepitone along with defendant Amaturo caused defendant Rivkin Radler to delay the loan payments which were due when the individual condominium units closed.

**15.** This Court considers the circumstance to mean where, when and by whom.

**16.** For example, the complaint alleges that in September, 1988 and November 1988, defendant Rivkin Radler mailed plaintiff a letter enclosing tardy loan payments. Cmplt ¶ 34.