**AMERICAN EAGLE CREDIT CORP.,**
Plaintiff–Appellant,

v.

**Joseph GASKINS, Defendant,**

**Larry Gaskins and American
Orthopedic Services, Inc.,:**
Defendants–Appellees.

No. 89–2237.

United States Court of Appeals,
Sixth Circuit.

Argued Aug. 17, 1990.

Decided Nov. 30, 1990.

Laurence R. Imerman (argued), South-field, Mich., for plaintiff-appellant.

Wallace M. Handler, Michael W. Bartnik (argued), Snyder & Handler, Southfield, Mich., for defendants-appellees.

Before JONES and NELSON, Circuit Judges; and SILER,* Chief District Judge.

NATHANIEL R. JONES, Circuit Judge.

Plaintiff-appellant American Eagle Credit Corp. ("American Eagle"), appeals from the district court's dismissal of its RICO claim, 18 U.S.C. §§ 1961–1968, without leave to amend under Fed.R.Civ.P. 12(b)(6). For the reasons outlined below, we affirm.

---

* The Honorable Eugene Siler, Jr., Chief Judge for the Eastern District of Kentucky, sitting by des-   ignation.

## I.

The facts in this case are not in dispute. American Orthopedic Services, Inc. ("American Orthopedic") was in the business of renting and selling durable medical equipment to patients insured by Medicare, Medicaid and Blue Cross. In November, 1986, at the solicitation of American Orthopedic, American Eagle entered into a series of agreements with American Orthopedic. Under these agreements, American Orthopedic sold certain durable medical equipment to American Eagle and then leased the equipment back from American Eagle for rental to users. In addition to title which it held, American Eagle also took an Article 9 Security interest in the leased equipment. Mich.Stat.Ann. § 19.9101, *et seq.* [M.C.L.A. § 440.9101 et seq.].

At the time of the agreements and subsequently, American Orthopedic failed to inform American Eagle that federal insurance regulations require that rental charges incurred may not exceed the purchase price of the equipment and that after some period of months, the patient would own the rented equipment outright. 42 C.F.R. 405.514(g)(1)(ii) (1989). Pursuant to these requirements, American Orthopedic sold certain leased equipment belonging to American Eagle to users of that equipment over approximately a six month period. The value of the equipment is in dispute but the district court found that it was valued at approximately $40,000.00. J. App. at 51. American Orthopedic never informed buyers of the leased equipment of American Eagle's ownership interest or its security interest. The proceeds of the sales were not segregated from other funds under American Orthopedic's control. Subsequently, American Orthopedic defaulted on the leases and American Eagle was able to recover only a few pieces of equipment worth about $800. American Eagle was never paid for the items sold.

American Eagle claims that defendant American Orthopedic and defendant Larry Gaskins, a stockholder and officer of American Orthopedic,[1] fraudulently sold certain durable medical equipment which American Eagle owned and in which it had a security interest. American Eagle alleges that these sales involved use of the mails in violation of 18 U.S.C. § 1341 and constituted a pattern of racketeering activity for the purposes of RICO. Defendants filed a motion to dismiss under Fed.R.Civ.P. 12(b)(6). In their motion they claimed that the complaint failed to allege that they had the requisite intent to commit mail fraud and that it failed to allege a pattern of racketeering activity. The district court granted defendants' motion to dismiss without granting leave to amend the complaint. This timely appeal followed.

## II.

We review a district court's dismissal of an action pursuant to Fed.R.Civ.P. 12(b)(6) *de novo. Dugan v. Brooks*, 818 F.2d 513, 516 (6th Cir.1987). In conducting our review, we must take plaintiff's factual allegations as true and if it appears beyond doubt that the plaintiff can prove no set of facts in support of its claims that would entitle it to relief, then the dismissal was proper. *Id.*

In its complaint plaintiff-appellant American Eagle alleged mail fraud as the predicate act necessary to establish a pattern of racketeering required by RICO. Two elements are required to establish mail fraud under 18 U.S.C. § 1341: "a scheme or artifice to defraud and a mailing for the purpose of executing the scheme." *Bender v. Southland Corp.*, 749 F.2d 1205, 1215–1216 (6th Cir.1984). Further a scheme to defraud must involve "*[i]ntentional fraud*, consisting in deception *intentionally* practiced to induce another to part with property or to surrender some legal right, and which accomplishes the end designed." *Id.* at 1216 (quoting *Epstein v. United States*, 174 F.2d 754, 765 (6th Cir. 1949) (emphasis in original)).

---

**1.** Plaintiff-appellant's original complaint named a number of other officers of American Orthopedic, as well as another corporation, American Home Care, Inc. as defendants. All but the above-named defendants, however, have been voluntarily dismissed from the complaint and therefore are not subjects of this appeal.

Recently, in *Dana Corp. v. Blue Cross & Blue Shield,* 900 F.2d 882 (6th Cir.1990), this court noted that in determining whether allegations of intentional mail fraud withstand a Fed.R.Civ.P. 12(b)(6) motion to dismiss, "the focus is upon the pleadings, not any proof or evidence." *Id.* at 885. In that regard, we indicated that a complaint would sufficiently plead a scheme to defraud if it included allegations of "misrepresentations or omissions which were 'reasonably calculated to deceive persons of ordinary prudence and comprehension.'" *Id.* (citations omitted).

▮ The district court held that American Eagle failed to make the requisite allegations of intent to defraud. In so doing it seemed to give weight to the fact that plaintiff characterized American Orthopedic's fraud with respect to the mails as simply mailing sales invoices to various insurance carriers of the users. *See* J.App. at 52. As we stated in *Dana,* following *Schmuck v. United States,* 489 U.S. 705, 109 S.Ct. 1443, 1447, 103 L.Ed.2d 734 (1989), "the mailings need not be an essential element of the scheme; it is sufficient that they be incident to an essential part of the scheme." 900 F.2d at 886. Thus, we held that routine mailings might be sufficient to establish mail fraud. *See id.* It would seem, then, that if plaintiff had sufficiently pled a scheme to defraud, the fact that American Orthopedic used the mails only in order to collect the proceeds of the fraud through routine sales invoices would not defeat a claim for mail fraud.

It is not clear to us reviewing the record that plaintiff-appellant's pleadings could not have been amended to rectify technical failings with respect to the mail fraud allegation. The district court's dismissal without leave to amend the complaint precluded plaintiff from having an opportunity to make the proper allegations. However, as we find that plaintiff did not and cannot sufficiently plead the facts required to establish a pattern of racketeering under RICO, there is no need to unsettle the district court's dismissal under Fed.R. Civ.P. 12(b)(6).

III.

▮ Section 1961 of RICO provides that a "pattern of racketeering activity" requires the commission of two predicate acts within ten years of each other. 18 U.S.C. § 1961(5). While the language of the statute seems straightforward, defining the pattern requirement has proved difficult. In its recent case *H.J., Inc., v. Northwestern Bell Telephone Co.,* 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989), the Supreme Court sought to clarify some confusion in the circuits as to the precise elements of the "pattern" requirement. In *H.J.,* the Court held that proof of a pattern of racketeering activity requires a showing that "the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *Id.* 109 S.Ct. at 2900 (emphasis in original).

In the case at bar the district court found that American Eagle had made the necessary allegations as to the "relatedness" of American Orthopedic's predicate acts. J. App. at 57. However, it held that the complaint failed to allege the "continuity of criminal activity" required to sufficiently plead a pattern of racketeering. *Id.*

In *H.J.,* the Court held that

[a] party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates [i.e., mail fraud] over a *substantial period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long term criminal conduct.* *H.J.,* 109 S.Ct. at 2902 (emphasis added).

The alleged criminal acts by the defendants in this case took place over a brief and isolated period between December, 1986, and May, 1987. By its own admission American Eagle states that "prior to the former date and subsequent to the latter date, [American Orthopedic] was not engaged in a pattern of racketeering and was not an enterprise as defined by RICO." J.App. at 24. This admission would seem to foreclose the possibility of finding a continuing threat of criminal activity on the

part of American Orthopedic. We must therefore conclude, along with the district court, that this case presents "the kind of 'very short period[ ] of criminal activity' which [is] insufficient to state a pattern under *H.J..*" J.App. at 57 (citing *H.J.*, 109 S.Ct. at 2902 n. 4.).

## IV.

Even taking all of its alleged facts to be true, American Eagle can prove no set of facts which would entitle it to relief. Therefore, we AFFIRM the district court's dismissal of American Eagle's claims under Fed.R.Civ.P. 12(b)(6).

DAVID A. NELSON, Circuit Judge, dissenting.

Justice Scalia wrote a separate opinion in *H.J.* that was somewhat critical of the majority's discussion of the "continuity" requirement. He may or may not have been indulging in a touch of hyperbole, but Justice Scalia professed, at least, to read the Court's *H.J.* opinion as "saying that at least a few months of racketeering activity (and who knows how much more?) is generally for free, as far as RICO is concerned." *H.J.*, 109 S.Ct. at 2908 (Scalia, J., concurring in judgment).

My colleagues evidently read *H.J.* the same way. With respect, I think a less startling interpretation is possible. Chief Judge Platt, of the Eastern District of New York, recently suggested that the question under *H.J.* is whether "at the time of occurrence" of racketeering activity there is a threat of future criminal activity sufficient to satisfy the continuity requirement. *Morrow v. Black*, 742 F.Supp. 1199, 1207 (E.D.N.Y.1990). Whether the threat actually materializes, in Judge Platt's view, is not determinative: "That hindsight proves that the defendants are found out after a few weeks would not alter the conclusion that the activity threatened future activity at the time of its occurrence." *Id.*, n. 20.

I agree. Whether repeated criminal acts satisfy the continuity requirement is a question to be determined not in hindsight, it seems to me, but in light of what was known when the acts occurred.

I am aware of no admission, in the case at bar, that at the time American Orthopedic began making the mailings that are now alleged to have violated the mail fraud statute it was understood that the conduct in question would not continue for more than six months. Nothing in the plaintiff's complaint forecloses the possibility of a showing that there was a reasonable prospect, initially, of the misconduct being continued beyond May of 1987. This being so, I do not believe that the complaint was subject to dismissal for failure to state a claim on which relief could be granted.