12 F.3d 212
 RICO Bus.Disp.Guide 8452
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Sandra M. KYNE, Plaintiff-Appellant,
v.
DELOITTE & TOUCHE, Woodland Square Group, Ltd., and Natchez
Trace, Ltd., Defendants-Appellees.
 No. 92-6146.
 United States Court of Appeals, Sixth Circuit.
 Dec. 2, 1993.
 
 On Appeal from the United States District Court for the Middle District of Tennessee, No. 89-00181; Higgins, J.
 M.D.Tenn.
 AFFIRMED.
 Before: KEITH and JONES, Circuit Judges; and PECK, Senior Circuit Judge.*
 PER CURIAM.
 
 
 1
 Plaintiff-Appellant Sandra M. Kyne appeals the summary judgment granted for the three defendants-appellees--Deloitte & Touche, Woodland Square Group, Ltd., and Natchez Trace, Ltd.--on securities law, common law fraud, and civil RICO claims. We affirm the district court and hold that all of Kyne's claims except for her RICO claim are barred by the applicable statute of limitations. Summary judgment was properly granted on the RICO claim, for Kyne has not alleged a "pattern" of racketeering activity as required by statute.
 
 
 2
 * Kyne received over $400,000 cash, plus $50,000 a year, in a divorce settlement in 1983. She knew that she needed investment advice and was recommended to the Deloitte & Touche accounting firm ("Touche").[1] At a social event, she met a Touche accountant, Eddie W. Redmon, and later contacted him seeking such advice. Redmon recommended limited partnerships as appropriate for Kyne's needs, and he suggested Woodland Square as a particularly good investment. Redmon showed her the relevant offering materials, which included a "Summary Page" which stated, in pertinent part:
 
 
 3
 3. Total risk to the Limited Partner is limited to the amount of cash invested.... The Limited Partner supplies the capital, the General Partners the work and responsibility for liabilities of the partnership.
 
 
 4
 4. For a complete understanding of the terms of the partnership, the partnership agreement must be studied.
 
 
 5
 J.A. at 116 (emphasis added). The offering memorandum included sections within the documents that contradicted paragraph three above, describing the limited partner's guaranty of bank loans in the amount of $625,000.
 
 
 6
 Kyne was given these papers and says that she attempted to read them but was unable to understand their meaning. Nonetheless, in January 1985, she signed the documents. Redmon never revealed that he and Touche were providing accounting services to Woodland Square, and, in fact, billing both Woodland Square and Kyne for work on the sale.
 
 
 7
 In March 1985, Redmon contacted Kyne with a suggestion for another investment, a limited partnership in Natchez Trace, which he recommended with the assurance that he, too, would be investing. What he did not reveal was that he had been a general partner in West Tennessee Properties, Ltd., which was being resyndicated into Natchez, thereby being relieved of guarantees executed on behalf of West Tennessee. Again, Kyne received the papers but did not understand them or thoroughly review them. Several months after signing, Kyne asked Redmon why she was required to submit financial statements to banks each year. Redmon told her that the banks needed them for their records, not that she had guaranteed these loans.
 
 
 8
 In September 1988, Natchez Trace defaulted on its loan from Sovran Bank. The bank then demanded and received $44,884.75 from Kyne as a guarantor. In February 1989, the bank demanded another $61,875. Kyne refused to pay this amount and began this action for damages and recission of her investment contracts.
 
 
 9
 On February 24, 1989, Kyne filed her complaint against Touche, Natchez Trace, and Woodland Square, as well as against several individual partners in the businesses.[2] Kyne's claims arise out of her investments in the partnerships. She asserts that she was not advised that she guaranteed notes executed by the partners in those limited partnerships. As an unsophisticated investor, she relied upon Redmon to disclose the material terms of her investments. She contends that Redmon did not inform her of the surety provisions as well as Redmon's and other Touche partners' personal benefits from her investment in the Natchez Trace partnership.
 
 
 10
 In her complaint, Kyne asserted violations of Section 10(b) of the Securities Act of 1934, 15 U.S.C. Sec. 78j, and Rule 10b-5 promulgated thereunder, 17 C.F.R. Sec. 240.10b-5; the Racketeer Influenced Corruption Act (RICO), 18 U.S.C. Secs. 1961(3), 1964(a) and (c) and 1965(c); the Tennessee state securities laws, Tenn.Code Ann. Secs. 48-2-109 and 48-2-121; and Tennessee's common law on fraud.
 
 
 11
 The district court granted the defendants' motions for summary judgment on the securities law claims and the common law fraud claims on a number of bases, including time-barring under the statute of limitations. The court also stated that Kyne could not have reasonably relied upon Redmon's oral statements regarding the guaranty obligations in light of the written material she received, which the court believed clearly set out those obligations. The district court also granted summary judgment on the RICO claim, although it found jurisdiction on a Section 10(b) securities claim.
 
 II
 
 12
 We agree with the court below that all claims in this case, excluding the RICO claim, are barred by applicable statutes of limitations. The court's findings of fact that underlie its conclusion are that the Woodland Square and Natchez Trace transactions occurred on January 30, 1985, and in July 1985, respectively. The complaint in this case, as noted above, was not filed until February 24, 1989.
 
 
 13
 The district court based its decision as to Kyne's 10b-5 claim on Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, 111 S.Ct. 2773 (1991). In Lampf, the Supreme Court adopted a statute of limitations for private 10b-5 actions from another section of the 1934 Securities Act. The statute of limitations requires that an action be brought within one year after the discovery of the fraud, or within three years after the incident giving rise to the cause of action, whichever comes first. The Court further ruled that the doctrine of equitable tolling does not apply to 10b-5 claims. Moreover, Lampf applied the statute of limitations retroactively to the claim it adjudicated, and a decision announced on the same day, James B. Beam Distilling Corp. v. Georgia, 111 S.Ct. 2439 (1991), requires that the Lampf statute of limitations apply retroactively to all cases not finally adjudicated when Lampf was decided on June 19, 1991. See Welch v. Cadre Capital, 946 F.2d 185, 188 (2d Cir.1991). The district court therefore correctly followed Lampf when it issued its December 4, 1991, decision dismissing Kyne's 10b-5 claim.
 
 
 14
 Fifteen days later, however, on December 19, 1991, Congress amended the 1934 Act by enacting section 27A to modify the retroactive effect of the Lampf ruling. The section requires district courts to reinstate claims filed prior to the Lampf decision that they had dismissed as a result of Lampf. 15 U.S.C. Sec. 78aa-1. Recently, this circuit held that insofar as section 27A "reopens" cases that a federal court has dismissed, it is an unconstitutional violation of the judiciary's power. See Plaut v. Spendthrift Farm, 1 F.3d 1487, 1492-96 (6th Cir.1993). Therefore, we give section 27A no effect in this case, and uphold the district court's reliance on Lampf in dismissing the securities claim, as Kyne filed her complaint after the three-year period had run out.
 
 
 15
 Even if section 27A did apply here, we would nevertheless hold that Kyne's claims were time-barred. That section instructs us to reinstate only those claims that were timely filed under the applicable law at the time of the Lampf decision. At the time of Lampf, there was conflict regarding whether the Tennessee statute of limitations to be applied to private 10b-5 actions at the time of Lampf was the period authorized by the state securities statutes or the one for common law fraud. See Ockerman v. May Zima & Co., 694 F.Supp. 414, 416 (M.D.Tenn.1988) (applying state securities law period); Nichols v. Merrill Lynch, Pierce, Fenner & Smith, 706 F.Supp. 1309, 1321 (M.D.Tenn.1989) (applying state common law fraud period). Under either of these statutes of limitations, Kyne's claims are barred. Tennessee securities law allows claims to be filed within two years of repose or within one year of discovery of the cause of action, whichever occurs first, and Kyne's claims are therefore barred as under Lampf. Tennessee's three-year limitation on fraud actions runs from the date that the fraud should have been discovered, and we cannot find that the district court's finding that Kyne had enough information in 1985 that she should have known about her surety obligations is erroneous.
 
 III
 
 16
 Unlike the securities statute, RICO has a four-year statute of limitations, meaning that Kyne's RICO claim regarding the July 1985 Natchez Trace transaction was not time-barred when she filed her February 1989 complaint, though her claim regarding the January 1985 Woodland Square transaction is barred.
 
 
 17
 The district court granted summary judgment on the RICO claim in part because Kyne cannot prove the requisite predicate acts nor the "pattern of racketeering activity" necessary under RICO. 18 U.S.C. Sec. 1961(5). We agree. Upon review, we hold that Kyne has not alleged predicate offenses that amount to or pose a threat of continued criminal activity as required by the statute.
 
 
 18
 The question of what activity constitutes a pattern under RICO is a notoriously difficult one to answer. Congress imposed the pattern requirement in order to ensure that RICO's treble damages would apply to only widespread criminal activity, organized crime syndicates being the paradigmatic example. In H.J., Inc. v. Northwestern Bell Tel. Co., 109 S.Ct. 2893 (1989), the Supreme Court explained that, as the statute stands, properly claiming a RICO pattern of activity involves something more than just alleging two or more predicate offenses--the offenses must be related and must be continuous. Continuity, the court explained, is "centrally a temporal concept" that can be shown through predicates that extend over a "substantial" period of time. Id. at 2902. Alternatively, if a RICO lawsuit ends the racketeering before continuity can be established in that manner, the requirement can be met through facts that show a "threat of continuity." Id.
 
 
 19
 We agree with the district court that the time period over which the defendants' acts occurred does not constitute a "substantial" period of time under H.J. The district court's review of cases convinced it that schemes running for two or more years generally satisfy the continuity requirement. J.A. at 150-151. While we do not at this time subscribe to any bright line test for what is substantial under H.J., we do hold that the activity here does not reach that level. Both the Woodland Square and Natchez Trace transactions occurred, in full, within several months of each other. "Predicate acts extending over a few weeks or months ... do not satisfy [the continuity] requirement." H.J., 492 U.S. at 2902; see American Eagle Credit Corp. v. Gaskins, 920 F.2d 352, 354-55 (6th Cir.1990) (acts occurring over six-month period do not meet the H.J. continuity requirement); Thompson v. Paasche, 950 F.2d 306, 310-11 (6th Cir.1991). Nor is there any allegation that the claimed fraud here would threaten continued activity, "by its nature project[ing] into the future with threat of repetition." H.J., 109 S.Ct. at 2902. In fact, the primary reason for this alternative means of reaching the continuity requirement appears to be that without it, continuous racketeering activity that ends prematurely only because of the filing of a RICO action would be excluded from the statute's reach. Here, the RICO claim was not filed until almost four years after the predicate offenses, and yet there is no indication of a continuing enterprise.
 
 
 20
 From a common sense perspective, the defendants' conduct alleged here was, at worst, more like fraud in an ordinary commercial transaction than it was like the organized activity that merits RICO's extraordinary remedies. As such, we affirm the district court's judgment.
 
 
 
 *
 Honorable John W. Peck, senior circuit judge, deceased September 7, 1993. Judge Peck participated in the oral argument but not the decision in this case
 
 
 [1]
 This firm was then known as Touche Ross
 
 
 [2]
 The actions against the individuals are not at issue here, as the district court stayed all proceedings against them when Suggestions of Bankruptcy were filed against each