Alexander FRIEDMANN,
Plaintiff–Appellant,

v.

CORRECTIONS CORPORATION OF AMERICA; Kevin Myers; Charles Grimes; Mark Collins; Lee Campbell; Clara Floyd; Roscoe Clayton; How-ard Cook; Joe Patterson Defendants–Appellees.

No. 99–6587.

United States Court of Appeals,
Sixth Circuit.

April 26, 2001.

Before MERRITT and SILER, Circuit Judges; SARGUS, District Judge.[*]

---

[*] The Honorable Edmund A. Sargus, Jr., United States District Judge for the Southern District of Ohio, sitting by designation.

## OPINION

SARGUS, District Judge.

Alexander Friedmann, who is proceeding *pro se*, appeals the district court's dismissal of his prisoner civil rights claim brought pursuant to 42 U.S.C. § 1983. The appellant, who is no longer incarcerated, alleges that he was transferred from the South Central Correctional Facility ["SCCF"], a private institution in the State of Tennessee operated by the Corrections Corporation of America ["CCA"], to the Northwest Correctional Center ["NCC"], in retaliation for the exercise of his rights under the First Amendment to the United States Constitution. Specifically, Plaintiff alleges that he was transferred because he voiced opposition to the privatization of prisons. For the reasons that follow, the decision of the district court is hereby AFFIRMED.

### I.

In November 1997, while incarcerated at SCCF, Plaintiff-appellant. Alexander Friedmann [hereinafter referred to as "Friedmann"], was interviewed by a journalist for a nationally published magazine, *The Nation*, for an article concerning prison privatization. Although a copy of the publication was later forwarded to Friedmann at SCCF, Warden Kevin Myers notified Friedmann on January 29, 1998 that he would not be permitted to receive the same. Friedmann did, however, prepare a compilation of various news articles regarding prison operation, which articles had appeared in publications that Friedmann was permitted to receive at SCCF. Friedmann named his compilation "News That CCA Would Prefer You Didn't Know." (*Exhibit A* attached to *Complaint*). Friedmann intended to forward the document to state legislators.

On February 11, 1998, Friedmann's request to photocopy the document was rejected by Defendant Clara Floyd, an SCCF employee. Friedmann's document was then forwarded to Defendant Warden Myers for review. Sometime shortly thereafter, Friedmann was informed by Defendant Lee Campbell that Defendant Myers had ordered a special reclassification hearing on the issue of involuntarily transferring Friedmann to another institution. A reclassification hearing was held on February 13, 1998. The panel, consisting of Defendants Lee Campbell, Charles Grimes and Mark Collins, recommended that Friedmann be transferred. The following reason was given for the decision:

> [I]nmate Friedmann continues to create and disseminate information concerning negative incidents experienced by CCA in the past. Inmate Friedmann solicits outside support in his cause to disrupt operations of this facility. Inmate Friedmann disrupts the normal day to day operation of this facility by soliciting other inmates to join him in his efforts to degrade CCA with negative articles and outside sources. In addition, inmate Friedmann continually complains of retaliation, harassment, and other forms of bias by staff.

(*Exhibit B* attached to *Complaint*).

Friedmann appealed the panel's decision to the Director of Classification Programs. Friedmann was, however, transferred to NCC on February 20, 1998. On February 27, 1998, the Director upheld the panel's decision, stating:

> After review of appeal and discussion with warden classification is upheld. (*sic*). [W]arden's reasons appear sound, *i.e.*, the potential for disruptive conduct on the part of inmates, as a result of another inmate making a deliberate effort to disseminate material which is negatively oriented to the prison operating company, is of concern. Methods of a particular inmate or group of inmates to influence inmate attitudes

by concentrating material within an incarcerated population is viewed as more significant than the availability of news articles via mail or media.

(*Exhibit C* attached to *Complaint* ).

Friedmann maintains that he was transferred in retaliation for the exercise of his First Amendment rights. Friedmann further alleges that the transfer placed a hardship upon him because NCC is approximately three hundred miles away from those who visit him [1] and because NCC does not have the programs in which Friedmann was involved at SCCF.[2]

In her *Report and Recommendation,* Magistrate Judge Griffin concluded that the Friedmann's retaliation claim failed to state a basis for relief. The Court reasoned that an administrative transfer from the general population of one prison to the general population of another prison fails to constitute the sort of "adverse action" required for a retaliation claim, as that standard is set forth in *Thaddeus–X v. Blatter,* 175 F.3d 378 (6th Cir.1999). The District Court subsequently adopted the recommendation of the Magistrate Judge. Friedmann argues that the Court erred in concluding as a matter of law that transfer from one prison facility to another does not constitute an adverse action. Friedmann further argues that *Thaddeus–X* does not preclude a claim for retaliatory prison transfers.

This Court reviews *de novo* a District Court's determination of dismissal under Fed.R.Civ.P. 12(b)(6). *See Murphy v. Sofamor Danek Group, Inc.,* 123 F.3d 394, 400 (6th Cir.1997). This Court "take[s] the Plaintiff's factual allegations as true and if it appears beyond doubt that the Plaintiff can prove no set of facts in support of its claims that would entitle it to relief, then the dismissal was proper." *American Eagle Credit Corp. v. Gaskins,* 920 F.2d 352, 353 (6th Cir.1990).

## II.

In *Thaddeus–X v. Blatter,* 175 F.3d 378, 394 (6th Cir.1999), this Court held that an inmate claiming retaliation for the exercise of First Amendment rights must show: (1) that he or she engaged in protected conduct; (2) that an adverse action was taken that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) that there is a causal connection between elements one and two—that is, that the adverse action was motivated, at least in part, by the inmate's protected conduct.

 Although the Magistrate Judge did not address the first element of Friedmann's retaliation claim, clearly Friedmann's criticism of private prison operation was conduct protected by the First Amendment, at least to the extent that the conduct was not contrary to legitimate penological concerns. *See Pell v. Procunier,* 417 U.S. 817, 822, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974). The contested issue before this Court is whether Friedmann's transfer from SCCF to NCC constituted "adverse action;" that is, whether the transfer would deter a person of ordinary firmness from continuing to engage in the protected conduct. Friedmann argues that a prison transfer, while not itself violative of the Constitution, carries with it an inherent chilling effect on the prisoner's exercise of his constitutional rights. Friedmann further argues that there at least exists a question of fact as to whether a

---

1. SCCF is located approximately one hundred miles from Friedmann's friends and family.

2. At SCCF, Friedmann was involved in the Pledge Program, an organization that collected funds for Special Olympics; the Christian Children's Fund; and TALL, a self-help program for at-risk youth.

person of ordinary firmness who is transferred from one prison to another, would be deterred from engaging in criticism of the privatization of prisons following the transfer. Thus, Friedmann submits that the Magistrate Judge erred in concluding, as a matter of law, that a prison transfer cannot constitute "adverse action."

In *Thaddeus–X*, this Court held that "[i]n the prison context, an action comparable to transfer to administrative segregation would certainly be adverse." *Thaddeus–X v. Blatter*, 175 F.3d at 396. Whether other actions are sufficiently adverse depends upon "whether an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities." *Id.* at 397 (internal quotations omitted). Indeed, this Court reasoned that prisoners may be required to tolerate more than average citizens before an action is considered adverse. *Id.* at 398. This Court also recognized, however, that the benefit of the standard is that it is an objective inquiry, capable of being tailored to the different circumstances in which retaliation claims arise "and capable of screening the most trivial of actions from constitutional cognizance." *Id.* Furthermore, the objective "adverse action" standard "is not a means whereby solely egregious retaliatory acts are allowed to proceed past summary judgment." *Id.*

As the appellees point out, this Court has addressed the adverse action requirement on several occasions post-*Thaddeus-X*. In these unreported decisions, this Court has repeatedly held that transfer from one prison to another prison "cannot rise to the level of an 'adverse action' because it would not deter a person of ordinary firmness from the exercise of his First Amendment rights." *Mandela v. Campbell*, No. 97–5712, 1999 WL 357825, at 3, 181 F.3d 102 (6th Cir. May 26, 1999) (unpublished). In *Mandela*, the inmate

filed numerous grievances and lawsuits and contacted outside politicians and agencies concerning actions against black inmates which he believed were discriminatory. The plaintiff inmate was transferred to another institution, of the same security level, as a means of preventing disturbances in the prison environment. This Court affirmed the decision of the district court and held that the prison transfer would not deter a person of ordinary firmness from exercising his First Amendment rights. Furthermore, this Court expressed its reluctance to second-guess the judgment of prison officials in transferring inmates. *Id.*

Similarly, in *Goss v. Myers*, No. 99–5544, 2000 WL 125905, 208 F.3d 213 (6th Cir. Jan.28, 2000) (unpublished), this Court held that the transfer of an inmate from one maximum security prison to another maximum security prison following the inmate's sending and receipt of mail of allegedly religious nature, is not an adverse action. In *Goddard v. Kentucky Dept. of Corrections*, Nos. 99–5348, 99–5971, 2000 WL 191758, 205 F.3d 1340 (6th Cir. Feb.7, 2000) (unpublished), this Court again held that the transfer from one prison to another because of an inmate's filing of numerous grievances, is not adverse action. In *Herron v. Campbell*, Nos. 99–5121, 99–5123, 1999 WL 1045158, 198 F.3d 245 (6th Cir. Nov.9, 1999) (unpublished), this Court held that transfer from one prison to another because of inmates' activity as jailhouse lawyers, is not adverse action.

This Court has, however, found certain action sufficiently adverse for purposes of a retaliation claim. In *Dunham–Bey v. Holden*, No. 98–1522, 1999 WL 1023730, 198 F.3d 244 (6th Cir. Nov.5, 1999) (unpublished), the plaintiff inmate alleged that the defendants fabricated disciplinary charges and placed him in segregation in retaliation for his having used the prison

grievance system. This Court concluded that this action was sufficiently adverse so as to state a claim upon which relief could be granted. Similarly, in *Herron v. Harrison*, 203 F.3d 410 (6th Cir.2000), this Court held that an inmate who claimed he was placed in segregation for assisting other inmates in the filing of grievances, alleged conduct sufficiently adverse for a retaliation claim.

As evidenced by the foregoing, it is clear that, in order to constitute "adverse action," the circumstances must evidence some form of deterrent effect on the inmate. Clearly, placement in segregation satisfies this requirement. In addition, as this Court noted in *Thaddeus–X*, allegations of harassment and physical threats may also evidence a likely deterrent effect on the inmate's First Amendment conduct. *Thaddeus–X*, 175 F.3d at 398. It seems clear, however, that a mere transfer to another institution of the same security level, with no other aggravating factors, is not sufficiently adverse to deter a person of ordinary firmness from engaging in the exercise of protected First Amendment activity.

In this case, Friedmann makes no allegation of any aggravating circumstances in connection with his transfer to the NCC. He simply claims that the institution was located farther away from those who visited him and that the institution did not offer the programs in which he had previously participated. This Court concludes that such circumstances are not sufficient to support a showing of "adverse action" for purposes of a retaliation claim. In other words, this Court concludes that, in the absence of any aggravating circumstances, the Court cannot conclude that Friedmann's transfer to NCC would deter a person of ordinary firmness from the exercise of his First Amendment rights.

In sum, this Court concludes that the district court did not err in holding that

Friedmann failed to state a claim upon which relief could be granted. The decision of the district court is therefore AFFIRMED.

IT IS SO ORDERED.